Miller's Trust.

Argued October 4, 1933.   Before SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John G. Frazer,* with him *William M. Hall,* of *Hall & Hunter* and *Reed, Smith, Shaw & McClay,* for appellant, Union Trust Company of Pittsburgh.

*George B. Berger,* for appellant, Lois Miller Waterman.

*William Watson Smith,* with him *Miles H. England, Leon E. Hickman* and *Smith, Buchanan, Scott & Gordon,* for appellee, Rachel Larimer Miller.

*John G. Frazer,* with him *William M. Hall,* of *Hall & Hunter* and *Reed, Smith, Shaw & McClay,* for appellee, Union Trust Company of Pittsburgh.

OPINION BY MR. JUSTICE SIMPSON, November 27, 1933:

Reuben Miller gave to the Fidelity Title and Trust Company of Pittsburgh, the sum of $200,000, on an active trust, the income therefrom to be paid to his four children "share and share alike, for and during the term of their respective lives; and, upon the death of each of them, his or her portion of the principal, to wit, one quarter thereof, shall be paid to such person or persons as may be designated by his or her last will and testament, or, in the absence of such designation, to such person or persons as would take the same as heirs of said deceased child under the intestate laws of the State of Pennsylvania.

"Neither the principal of the said trust estate, nor the income thereof, shall in any manner be subject to the control or answerable for the debts, contracts, engagements or torts of my said children, or liable to any charge, assignment, conveyance or anticipation by them."

Reuben Miller, Jr., one of the four children referred to, died, and by his will, which did not refer to the trust

deed or to the power of appointment given to him thereby, provided: "Item. 1. I do direct that my just debts and funeral expenses be paid as soon after my decease as conveniently may be done.

"2. In the event that my wife, Rachel Larimer Miller survives me, I do give, devise and bequeath all of my estate, be the same real, personal or mixed, and wheresoever situate, unto her, my said wife, absolutely and in fee simple."

The will then makes sundry bequests to take effect should he survive his wife, or should they "die in the same casualty"; but, as she survived him, these provisions are unimportant.

Section 11 of the Wills Act of June 7, 1917, P. L. 403, 407, which is a reënactment of section 3 of the Act of June 4, 1879, P. L. 88, provides as follows: "A general devise of the real estate of the testator, or of the real estate of the testator in any place, or in the occupation of any person mentioned in his will, or otherwise described in a general manner, shall be construed to include any real estate, or any real estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will. In like manner, a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will."

At the audit of the account of the trustee, there were three sets of claimants for the Reuben Miller, Jr., share: The widow and the creditors of decedent claimed that the above section of the Wills Act executed the power, the widow claiming the whole of the fund under the sec-

ond paragraph of the will, and the creditors claiming sufficient of it to pay their debts, because of the first paragraph of the will. The heirs at law of the decedent claimed that the statute did not apply, since the deed of trust did not give decedent the "power to appoint in any manner he may think proper," but expressly limited that power to the extent set forth in the above quoted spendthrift clause of the deed. The court below awarded the fund to the widow; these two appeals were then taken, one on behalf of the creditors of decedent and the other by one of the heirs at law. The decree must be affirmed.

Obviously, our first question is as to whether or not the statute applies to this deed of trust. Admittedly, if the first paragraph of the deed is considered by itself, the statute does apply, for that paragraph gives to this decedent a general and unlimited power of appointment. Does the second paragraph limit the scope of that power? As the paragraph must be considered in its entirety in determining this question, we think it does not. When it is said that "neither the principal of the said trust estate, nor the income thereof, shall in any manner be subject to the control" of the donor's children, it obviously does not mean that at no time shall the principal and income be subject to such control, for this would destroy the power of appointment, so carefully provided for in the first paragraph. In our opinion the true meaning of the deed of trust is that the donor intended that his children should have the entire income of the trust estate, and their appointees should have the entire estate in remainder, in both cases without impairment by reason of any acts of the children, or by reason of any legal procedure as a result of any of their acts. The whole tenor of the deed shows that it is designed to exclude life tenants from directly or indirectly subjecting the trust estate to liability for their acts, whether the liabilities are intended to be effective during their lives, or at their deaths. There shall be no "control" except the unlimited power of appointment; there shall be no depletion be-

cause of the "debts, contracts, engagement or torts" of the life tenants; nor shall there be liability "to any charge, assignment, conveyance or anticipation by" the life tenants. These all relate to acts of the life tenants which necessarily must begin, if at all, during their lifetimes. On the other hand, the right to take, under the power of appointment, can only become effective upon their deaths, and the appointees may be changed previously thereto whenever and as often as the life tenants choose. This conclusion compels an affirmance on the appeal by Lois Miller Waterman, one of the heirs at law.

The only other question is: Under the son's will, is the share of the trust estate, from which he was receiving the income, to be applied first to the payment of his debts and funeral expenses, or does it all go to his widow? It will be recalled that the will does not refer in any way to the power of appointment or to the trust estate, but simply contains the usual provision directing the payment of testator's debts and funeral expenses, and then gives "all of my estate, be the same real, personal or mixed, and wheresoever situate, unto her, my said wife, absolutely and in fee simple." As we have already pointed out, and as the widow and creditors agree, this, under section 11 of the Wills Act, operates as an execution of the power of appointment. Does it operate to appoint to creditors as well as to the widow, so as to require, in the first instance, the payment of the son's debts and funeral expenses, leaving only the residue to her? We think not. What we have above said at least partly answers this question. The donor, as shown by the second paragraph of his deed, desired the appointment to be made free from liability for "the debts, contracts, engagements or torts of my said children."

We recognize the fact that section 11 of the Wills Act is copied from an earlier English statute, and that, generally, it would be presumed, under such circumstances, that the previous interpretation of its language, as given by the courts of England, would be applied here. But

this is only a presumption, and will not be applied in cases where the English interpretation is contrary to the course of development of our law. It was said by Judge PENROSE, and affirmed by this court on his opinion, that "the exercise of a general power of appointment does not, as in England, make the estate assets for payment of the debts of the appointor": Dunglison's Est., 201 Pa. 592, 594. So, also, it is said in Hagen's Est., 85 Pa. Superior Ct. 123, 129. In Terppe's Est., 224 Pa. 482, testatrix had an estate of her own, and a life estate over which she had a power of appointment. She directed that her debts be paid, and then specifically gave to her son one of the properties over which she had the power of appointment, subject, however, to certain encumbrances thereon which were existing at the time of her death. It was held that this property was not chargeable with the widow's debts. In Valentine's Est., 297 Pa. 99, we decided that "Where a testatrix having a power of appointment directs the payment of all debts, without mention of the appointive estate, the direction means that such debts are to be paid out of testatrix's individual estate, unless the will in other parts shows a contrary intent." No such intent appears here. Of course, in cases where the will, which executes the power, directs the payment of debts and then gives the residue of the estate to one who claims to be the appointed legatee, the latter can get only what is left after the debts are paid, for that is the necessary result of the use of the word "residue": Penna. Co. for Ins. on Lives, etc., Account, 264 Pa. 433. No such situation appears here, however.

We think that the conclusion we have reached is necessitated also by the language of the trust deed. Only "such *person or persons* as may be *designated*" by the son, are entitled to take. It is true "designated" may have any one of a number of meanings, depending on the context; but in the instant case there is no "designation" of the creditors at all, there is simply a direction to the executors to pay the "just debts and funeral ex-

penses......as soon after my decease as conveniently may be done." This is not a "designation" of a "person or persons" as donee, which is required by the deed of trust; certainly a direction to pay "funeral expenses" would not be, and the creditors, being in the same class and unnamed, must be treated in the same way. The creditors of an appointor change from time to time, and it may be that none of those who are such when the appointor's will is executed, may be so at the time of his decease. Under such circumstances, would the language of the will be held to include those whose claims have been barred by the statute of limitations? Can it be that only those donees will take who are determined to be creditors by the verdict of a jury or the decision of a chancellor? If so, the "person or persons" are not "designated" by the appointor, but by the jury or chancellor. Id certum est quod certum reddi potest is a valuable maxim not to be minimized; but surely it cannot turn unknown persons into "designated persons," yet so it would have to do in order that it should apply here.

The decree of the court below is affirmed and each appeal is dismissed at the cost of appellant therein.