## BARCLAY v. UNITED STATES.
### No. 9668.

United States Court of Appeals
Third Circuit.

Argued Nov. 4, 1948.

Decided April 27, 1949.

Lee W. Eckels, Pittsburgh, Pa. (C. Ward Eicher, Greensburg, Pa., Thorp, Bostwick, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellant.

Loring W. Post, Washington, D. C. (Theron Lamar Caudle, Assistant Attorney General, Robert N. Anderson, John W. Fisher, Special Assistants to the Attorney General, Owen McIntosh Burns, United States Attorney, Elliott W. Finkel, Assistant United States Attorney, Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge and Mc-LAUGHLIN and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The question in the instant case is whether a one-fifth interest in a testamentary trust created by Emma W. Coulter, the "donor", a resident of Pennsylvania, who died in 1929, is includable in the estate of Rebecca Coulter Barclay, the donor's daughter, the "decedent". The court below found the interest includible [1] and the executor has appealed.

---

[1] See Barclay v. United States, D.C., 73 F.Supp. 816. See also the court's supplemental opinion, D.C., 74 F.Supp. 938.

The pertinent provisions of the donor's will are as follows: "All net income from the property thus held in trust * * * shall be distributed * * * among my children, Richard Coulter, Rebecca Coulter Barclay, Henry W. Coulter, William A. Coulter and Margaret Coulter, in equal shares, provided that, if any of my said children shall then be deceased, the share of the income which such deceased child would have received shall be disposed of in such manner as he or she may have, by his or her last will, appointed, and in default of such appointment such share of income shall go to such person or persons, as by the laws of the State of Pennsylvania, would have been entitled to the same if such deceased child at the time of each payment of income had been legally seized and possessed of said income in his or her own right and had died intestate."

"Upon the termination of said trust, the property, real and personal, then held in trust by the trustees under this Article of this codicil shall go, absolutely, in fee simple and free from all trusts, to my said children, Richard Coulter, Rebecca Coulter Barclay, Henry W. Coulter, William A. Coulter and Margaret Coulter, in equal shares provided that, if any of my said children shall then be deceased, the share of such deceased child shall be disposed of in such manner as he or she may have by his or her last will appointed, and, in default of such appointment, such share shall go to such person or persons as, by the laws of the State of Pennsylvania, would have been entitled to the same if such deceased child at the time of his or her death had been legally seized and possessed of said share in his or her own right and had died intestate."

"* * * the * * * trust shall immediately terminate upon the death of the last survivor of * * * [the] two trustees and in any event shall terminate twenty-one years after the date of my death."

"The * * * trustees are hereby empowered, in their sole discretion, to terminate the * * * trust at any time prior to the expiration of * * * twenty-one (21) years after my death if they shall deem proper."

The donor, Mrs. Coulter, named her son, Richard Coulter, and her daughter, the decedent, as trustees. It seems to be conceded by the parties that the trust is still in existence and has not been terminated.

The decedent, also a resident of Pennsylvania, died on June 22, 1937 leaving a will which stated in pertinent part, "It is my will that all my just debts, funeral expenses and expenses of proving this my last Will and Testament be in the first place fully paid and satisfied. * * * [Here follow specific bequests which would require a cash outlay of approximately $120,000]. All the rest, residue and remainder of my estate I will, devise and bequeath to my son John Barclay [Jr.]." John Barclay Jr. is the executor of his mother's, the decedent's, estate and hence the plaintiff herein. On April 5, 1939 by a document filed in the Orphans' Court of Westmoreland County, Pennsylvania, he renounced any interest which he might receive in the trust under the will of the decedent and elected to take his interest in the trust under the will of his grandmother, the donor.

The questions for our determination are identical with those which were before the court below. They may be stated as follows. Under the circumstances outlined does the one-fifth interest in the corpus fall within the purview of Section 302 (a) or (f) of the Revenue Act of 1926 as amended and the pertinent Treasury Regulations? [2]

---

[2] Revenue Act of 1926, c. 27, 44 Stat. 9. Sec. 302, as amended by Section 404 of the Revenue Act of 1934, c. 277, 48 Stat. 680:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States—

"(a) To the extent of the interest therein of the decedent at the time of his death. * * *

"(f) To the extent of any property passing under a general power of ap-

The court below, 73 F.Supp. at page 819, seemed to take the position that the decedent was a "life tenant having a general power of appointment" and therefore had "an estate equivalent to a fee", citing inter alia In re Perkins' Trust Estate, 314 Pa. 49, 170 A. 255, and In re Wilbur's Estate, 334 Pa. 45, 5 A.2d 325. But the decedent did not have a life estate coupled with a power of appointment. She had an estate for years in the income from the trust. The trustees held the corpus subject to the termination of the trust within twenty-one years or at an earlier date if the trustees should so determine. The decedent did have a general power of appointment over her share of the corpus. By will she could appoint to whomever she pleased including her own estate. The cases cited by the court below therefore are inapposite and the principle cited by the learned trial judge cannot rule the case at bar.[3]

█ We entertain no doubt that the decedent exercised the power of appointment conferred upon her by the donor's will. Section 11 of the Wills Act of June 7, 1917, P.L. 403, which was a re-enactment of Section 3 of the Act of June 4, 1879, P.L. 88, 20 P.S.Pa. § 223, provides in pertinent part as follows: "A general devise of the real estate of the testator, or of the real estate of the testator in any place, or in the occupation of any person mentioned in his will, or otherwise described in a general manner, shall be construed to include any real estate, or any real estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will. In like manner, a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will." It was the settled law of Pennsylvania at the time of the decedent's death [4] that a general bequest constituted an execution of a general power of appointment unless a contrary intention specifically appeared from the will. Huddy's Estate, 236 Pa.

pointment exercised by the decedent (1) by will * * *." 26 U.S.C.A.Int.Rev. Acts, pages 227, 230. Treasury Regulations 80 (1937 ed.):

"Art. 13. Property of decedent at time of death.—It is designed by the foregoing provision of the statute that there shall be included in the gross estate all property of the decedent, whether real or personal, tangible or intangible, the beneficial ownership of which was in the decedent at the time of his death, except real property situated outside the United States * * *."

[3] See In re Warren's Estate where it was stated, 320 Pa. at pages 112, 120–121, 182 A. at pages 396, 399–400, 104 A.L.R. 1345;

"It is argued that because Caroline had a life estate and a general power of appointment, she possessed the equivalent of a fee and hence the validity of her appointment should be measured commencing as of her death. But Caroline did not possess a fee. It is to be noted that there was a gift over in default of appointment. The alternative gift over precludes an absolute ownership. Lyon v. Alexander, 304 Pa. 288,

156 A. 84, 76 A.L.R. 1427; Rehr v. Fidelity [Philadelpia] Trust Co., 310 Pa. 301, 165 A. 380, 91 A.L.R. 99; Roberts' Estate, 18 Pa. Dist. & Co. R. 463; Curran's Estate, 312 Pa. 416, 167 A. 597; and Perkins' Trust Estate, 314 Pa. 49, 170 A. 255, were surcharge cases where appointees under a general power of appointment were held to be bound by acts of the donee with respect to consenting to investments. But, irrespective of this, Caroline, the donee of the power, expressly chose to exercise it—not as her own estate but as the estate of the donor over which she possessed the right of appointment."

It follows therefore that even had the decedent been possessed of a life estate, in view of the principle enunciated in the Warren case, there being a gift over in default of appointment, under the law of Pennsylvania the decedent would not be held to have the equivalent of an estate in fee.

[4] The Act referred to was repealed by the Act of April 24, 1947. P.L. 89, § 21. The repeal was effective as of January 1, 1948.

276, 84 A. 909. Cf. In re Wilbur's Estate, 334 Pa. 45, 53, 5 A.2d 325, 330, and Provident Trust Co. of Philadelphia v. Scott, 335 Pa. 231, 6 A.2d 814.

The United States contends that because the decedent by her will directed that all her just debts should be paid and stated that the residue and remainder of the estate should go to her son, Barclay, Jr., she commingled or blended the appointive property with her separate estate in her residuary estate. Such a conclusion is required by the doctrine of blending as enunciated in the leading case, In re Pennsylvania Company for Insurance on Lives, Etc.,[5] 264 Pa. 433, 436, 107 A. 840, 841–842, and reiterated by the Supreme Court of Pennsylvania in In re Miller's Trust, 313 Pa. 18, 24, 169 A. 362, 364. Cf. In re Valentine's Estate, 297 Pa. 99, 146 A. 453, 64 A.L.R. 737. The principle of blending was summed up as follows by the Supreme Court of Pennsylvania in In re Miller's Trust, supra, 313 Pa. at page 24, 169 A. at page 364, as follows: " * * * in cases where the will, which executes the power, directs the payment of debts, and then gives the residue of the estate to one who claims to be the appointed legatee, the latter can get only what is left after the debts are paid, for that is the necessary result of the use of the word 'residue' ". It will be observed that the decedent in her will made no reference to the power of appointment but did employ the word "residue". The trust in the instant case is not a spendthrift one.

Both the Pennsylvania Company case and the Miller case cited in the previous paragraph are referred to by the Supreme Court of Pennsylvania in In re Stannert's Estate, 339 Pa. 439, 441–445, 15 A.2d 360, 362–363, and both cases were distinguished by the Court in Stannert on their respective facts. But the Supreme Court in the Stannert case did not purport to apply a theory of law not applied by it in the Pennsylvania Company and the Miller decisions. In the three cases, Pennsylvania Company, Miller and Stannert, it appears that the decedents' separate property was insufficient to take care of debts while in the instant case it does not appear that the decedent's, Mrs. Barclay's, separate estate was not sufficient to pay her debts and the specific bequests specified in her will. See in this connection In re Jackson's Estate, 337 Pa. 561, 566–567, 12 A.2d 338, 341, 129 A.L.R. 819, where an excess of debts over the decedent's separate estate did not enter into the Court's consideration although the substantial excess of bequests over the amount of the decedent's personal estate was considered as a factor in determining the decedent's intention. Insofar as we can ascertain from an examination of the authorities, the question of the decedent's intention whether or not to blend the two classes of property, separate estate and trust estate, is deemed paramount. In the Stannert case, 339 Pa. at pages 442-443, 15 A.2d at page 362, it was said: "Her [the decedent's] intention in exercising her power of appointment is to be gathered from her will, and as it there appears it must prevail." We entertain no doubt from the terms of Mrs. Barclay's will that it was her intention to blend her separate estate with the corpus of the trust by exercising her power of appointment and that she did so.

It may be argued, of course, that it is unrealistic to construe the decedent's, Mrs. Barclay's, will under the Pennsylvania Wills Act as appointing the donor's, her mother's, estate for the payment of debts when under the Pennsylvania law claims based on debts would have to be proved against the decedent's estate within one year and more than ten years would elapse before title to the corpus of the trust could pass to the decedent's estate under her ap-

---

[5] The Pennsylvania Company case and that at bar can be distinguished in only two particulars. Under the circumstances of the cited case, following the death of Mrs. Snare, the decedent, the corpus of the trust was immediately available for the payment of her debts, whereas in the instant case the trust is still in existence and the corpus cannot become part of the decedent's residuary estate or become liable for her debts until the trust has terminated in 1950. There is also no showing that the decedent in the instant case had any substantial debts. We regard these differences in the circumstances as immaterial, however. It should be pointed out that the decedent in the case at bar did create numerous specific bequests under her will.

pointment. It will be borne in mind that the decedent died in June, 1937, that the trust is still in existence, insofar as the record shows, and unless action be taken by the surviving trustees to terminate it sooner, it will not come to an end until 1950. But the decedent must be deemed to have had knowledge of the Pennsylvania Wills Act and of the construction put upon wills under that statute by the Pennsylvania courts. Her intention seems manifest.

The United States contends that there was " * * * a sufficient shifting of economic interests at the death of the decedent to * * * [bring the corpus] within the taxing statute * * *", citing United States v. Jacobs, 306 U.S. 363, 367, 59 S.Ct. 551, 83 L.Ed. 763, and Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758. We agree with this contention and we conclude therefore that the court below was not in error in holding the corpus to be includable under subparagraph (a). Cf. Commissioner v. Estate of Cardeza, 3 Cir., 173 F.2d 19.[6]

■ It should be pointed out in conclusion on this point that Barclay, Jr. takes as legatee or devisee of the residuary estate of his mother, the decedent, under her will and not as a beneficiary under the trust created by the donor. As has been stated, Barclay, Jr. renounced his right to the trust under his mother's, the decedent's, will but he did not, of course, renounce a right to her residuary estate under the will. Barclay, Jr. elected to take whatever interest he may have had in the trust by virtue of the will of the donor, his grandmother, but in fact he could and did take nothing either under his grandmother's will or under the power of appointment exercised by his mother, the decedent, by her will. This is so because, as we have demonstrated, the decedent exercised her power of appointment in favor of her own estate. The renunciation by Barclay, Jr. was a nullity. He had nothing which he could renounce insofar as the corpus of the trust was concerned.

■ In view of the importance of the questions involved and the fact that the instant case may well have to pass the scrutiny of a higher tribunal we think it desirable to determine also the question of includability under subparagraph (f). We think that the corpus is also includable in the decedent's estate under subparagraph (f). The conclusion is required by Rogers v. Commissioner, 320 U.S. 410, 64 S.Ct. 172, 88 L.Ed. 134. In the instant case the decedent by exercising the power of appointment in favor of her own estate created a new estate and thereby passed the property under the power conferred upon her by the donor. This is the kind of transaction which creates the incidence of taxation and which the statute hits. See Kerr v. Commissioner, 174 F.2d 555.[7]

The judgment of the court below will be affirmed on the grounds indicated in this opinion.

---

[6] Nos. 9207, 9208, decided by this court on February 8, 1949.

[7] At No. 9723 decided by this court this day.