Elizabeth B. KEATING and The Pennsylvania Company for Banking and Trusts, Executors of the Estate of Edith K. Sands, Plaintiffs,

v.

Joseph F. T. MAYER, Former Acting District Director of Internal Revenue, Defendant.

Civ. No. 18482.

United States District Court
E. D. Pennsylvania.

Dec. 5, 1955.

MacCoy, Evans & Lewis, by Mark Wilcox, Jr., Philadelphia, Pa., for the plaintiff.

W. Wilson White, U. S. Atty., Philadelphia, Pa., for the defendant.

KRAFT, District Judge.

Edith K. Sands, a resident of Pennsylvania, died testate on July 12, 1950. At the time of her death she possessed a life interest in and a general power of appointment by will over a portion of a trust estate established by the will of her grandfather, a Pennsylvania resident, who died in 1894. His will also provided for a gift to Mrs. Sands' issue in default of her exercise of the power. Mrs. Sands had four sons all of whom survived her. Her will comprised only two paragraphs, one appointing executors and the other providing:

"1. I leave all my property to my sons who shall survive me, their heirs and assigns forever."

Plaintiffs, executors of Mrs. Sands' estate, did not include in her estate tax return that portion of trust principal over which she had general power of appointment. Defendant included it in decedent's gross estate and assessed a tax deficiency which plaintiffs paid with interest. Plaintiffs filed a claim for refund, and receiving no notice of allowance or disallowance, instituted this suit which defendant answered. Both plaintiffs and defendant request judgment on the undisputed facts disclosed by the pleadings and supporting affidavits.

Defendant contends that Section 811(a) [1] of the Internal Revenue Code of 1939, as amended, requires the inclusion in decedent's gross estate of the value of the appointive property. One ground

[1] "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * * [t]o the extent of the interest therein of the decedent at the time of his death * * *."

for this contention is that decedent had an absolute ownership or its equivalent because she had a life interest with a general power of appointment. This contention is unsound because the will of the donor, decedent's grandfather, made a gift over in default of appointment. This alternative gift over precluded an absolute ownership in the decedent. Warren's Estate, 320 Pa. 112, 182 A. 396, 104 A.L.R. 1345.

The next ground is that decedent exercised her appointive power by her will and in so doing commingled or blended the appointive property with her separate property so as to require inclusion of the former in her gross estate. Assuming that decedent did exercise her appointive power, her will discloses no intention to blend the appointive trust property with her own. Her will made no reference to her debts and neither expressly exercised nor even mentioned the appointive power. The property was appointed to her sons, not to her creditors or to her own estate. Huddy's Estate, 236 Pa. 276, 84 A. 909.

Barclay v. United States, 3 Cir., 175 F.2d 48, is readily distinguishable. There decedent's will provided for payment of all her debts, made substantial specific bequests and gave the residue to her son. The decision was consistent with In re Pennsylvania Co. for Insurances on Lives & Granting Annuities Account, 264 Pa. 433, 107 A. 840, where a decedent who directed payment of all her debts and gave the residue to her husband, was held to have blended the appointive fund with her own assets for the purpose of payment of her debts. As pointed out in Miller's Trust, 313 Pa. 18, 24, 169 A. 362, 364, this decision was on the basis that "where the will, which executes the power, directs the payment of debts, and then gives the residue of the estate to one who claims to be the appointed legatee, the latter can get only what is left after the debts are paid, for that is the necessary result of the use of the word 'residue.'" The decedent's will here did not direct payment of debts

or use the word "residue". A direction to pay debts followed by an express appointment of the residue does not necessarily result in a blending of the two estates for all purposes. Valentine's Estate, 297 Pa. 99, 146 A. 453, 64 A.L.R. 737.

In Miller's Estate, supra, decedent's will made no reference to his power of appointment or the instrument which created it, but did direct payment of debts and then gave all of his estate to his wife. The court held that the will exercised his power of appointment in favor of his wife but did not blend the two estates. The will now under consideration presents an even stronger case against the application of the blending doctrine because it, too, omits reference to the power of appointment and to the will which created the power, and gives all of the property to designated beneficiaries, making no mention of payment of debts.

Stannert's Estate, 339 Pa. 439, 15 A.2d 360, 362 and Hagen's Estate, 85 Pa.Super. 123, affirmed 285 Pa. 326, 132 A. 175, which the former cites with approval, both clearly hold that blending is a matter of intention which "must be plainly expressed or clearly implied from the appointment." No expression or clear implication of an intention to blend the appointive estate with her separate property is found in this decedent's will.

The last ground for contention that the appointive property is includible in decedent's gross estate under Section 811(a) is that there was a sufficient shifting of economic interest at decedent's death to bring the property within the provisions of that section. The law of Pennsylvania controlled the devolution of the property in question. Under that law a devisee or legatee of property appointed by exercise of a general power of appointment, who would have taken the same property under the donor's will in default of such appointment, takes the appointed property under the donor's will and not under that of the appointing donee. In re Freeman's Estate,

35 Pa.Super. 185;[2] Lewis v. Rothensies, 3 Cir., 138 F.2d 129. Since the property now in question was already vested in this decedent's sons by the will of the donor, their great-grandfather, and was not divested by any adverse exercise of the appointive power by the decedent's will, there was no shifting of economic interest at her death. Commissioner v. Cardeza's Estate, 3 Cir., 173 F.2d 19, 26, 9 A.L.R.2d 1368.

It is concluded, therefore, that because of the gift over in the donor's will, the decedent did not have an ownership of the appointive property; that she did not blend that property with her own; that there was no shifting of economic interest upon her death; and that the value of the appointive property is not required by Section 811(a) to be included in her gross estate.

Defendant also contends that the property is taxable under Section 811(f). Before 1942 property passing by exercise of a power of appointment was includible in decedent's gross estate. The Revenue Act of 1942 amended the pertinent provisions to include the value of any property with respect to which the decedent had, at the time of his death, a power of appointment.[3] Excepted from the amendments, inter alia, however, was any power of appointment created prior to the enactment, if decedent died before January 1, 1943 and the power was not exercised. This time limit was extended by subsequent successive enactments until superseded by the Powers of Appointment Act of 1951,[4] which, in the section now material, was made effective retroactively to October 21, 1942. Thus Section 811(f) so amended and effective at the date of this decedent's death provided:

"811. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all prop-erty, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * * [t]o the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent (1) by will or (2) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under subsections (c) or (d); but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof."

It is undisputed that the appointive property in this case was property with respect to which decedent had a general power of appointment created before October 21, 1942. The substantial dispute is whether decedent exercised that power by her will within the meaning of the taxing statute.

Section 14 of the Pennsylvania Wills Act[5] provides:

"In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules * * *

"(14) Power of appointment. A general devise of the real estate of the testator * * * shall be construed to include any real estate * * * which he shall have power to appoint in any manner he shall think proper, and shall operate as an execution of such power. In like manner, a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate * * * which he shall have power to appoint in any manner he shall think

---

2. Affirmed 1924, 280 Pa. 273, 124 A. 435, reaffirmed 1924, 281 Pa. 190, 126 A. 270.

3. Revenue Act of 1942, § 403, 56 Stat. 942, 26 U.S.C.A.Int.Rev.Acts, page 330.

4. 65 Stat. 91.

5. 20 P.S.Pa. § 180.14(14).

proper, and shall operate as an execution of such power. * * * "

Since no contrary intent appears in decedent's will the general dispositive provision therein must, under Pennsylvania law, be construed to include the property which decedent had power to appoint and to operate as an execution of the power. So executed it would appoint the property to the very persons who were entitled to it in default of any appointment, and hence to those to whom, under the decision in In re Freeman's Estate, supra, it was already vested under the donor's will, subject only to being divested by decedent's adverse exercise of her appointive power. Some lower court cases in Pennsylvania [6] have held that an express exercise of appointive power, or one implied by statutory rules of construction is a nullity where such exercise of appointive power appoints the property to the same persons who were entitled to take it in default of appointment, upon the ground that the property was already vested in them subject only to divestment by an adverse exercise of the appointive power.

Support is given the view that this should not be construed as an exercise of the power by Estate of Paul v. Commissioner, 16 T.C. 743, 747; and, by the following dictum in Estate of Rogers v. Commissioner, 320 U.S. 410, 415, 64 S. Ct. 172, 174, 88 L.Ed. 134: "Where a donee of a power merely echoes the limitations over upon default of appointment he may well be deemed not to have exercised his power, and therefore not to have passed any property under such a power."

However, sounder reason appears to exist for the view that Congress did not intend "exercise" to mean "effective exercise". Estate of Rogers v. Commissioner, supra, involved a case under the law prior to the 1942 amendment, but was not decided until after the enactment of the 1942 amendment. It is true that Congress must have been aware of this dictum at the time of the successive amendments extending the time limitation of the 1942 Act and at the time of passage of the Powers of Appointment Act of 1951. It employed no language showing an intention to disavow the dictum, but it is also true that during the same period, Congress must have been equally aware of the interpretive Treasury regulation [7] which was directly contrary to the dictum. This situation affords little real aid in ascertaining the legislative intent.

The instant case calls for an application of the pre-1942 law, excepting therefrom only the requirement that the property pass by the exercise of the power. The decisions which had construed what was an exercise of an appointive power under the pre-1942 law were known to Congress. Since, in situations like the present, Congress made only the change which eliminated the requirement that the property pass, it is reasonable to infer that Congress intended no change from prior judicial determination of what constituted exercise of a power.

Under similar circumstances, as a necessary prelude to the ultimate decision, it was held in Barclay v. United States, supra, that a Pennsylvania decedent had exercised her power of appointment. On this point the court said:

"But the decedent must be deemed to have had knowledge of the Pennsylvania Wills Act and of the construction put upon wills under that statute by the Pennsylvania courts." [8]

---

6. Orphans' Court of Philadelphia, Estate of Musser, No. 437, April Term 1913; Estate of Myers, No. 100, July Term 1881; Estate of Nistar, No. 1256 of 1941; Potter's Estate, 1930, 13 Pa.Dist. & Co.R. 667.

7. Treas.Reg. 105, § 8124 as amended by T.D. 5239 (1943).

8. 3 Cir., 175 F.2d 48, at page 52. The same rules of statutory construction of wills were in effect at execution of this decedent's will in 1943 and at her death in 1950. The 1947 Wills Act substantially re-enacted Section 11 of the 1917 Wills Act which was derived from Section 3 of the Act of 1879.

Helvering v. Grinnell, 294 U.S. 153, 55 S.Ct. 354, 79 L.Ed. 825, overruled Wear v. Commissioner, 3 Cir., 65 F.2d 665, upon the ground that the Circuit Court erred in holding that the pre-1942 law imposed the tax on the exercise of the appointive power rather than upon the passing of the property by such exercise. The effect in the instant case of the removal by Congress of the passing requirement is to impose the tax on the very thing upon which Wear v. Commissioner, supra, had previously held it to be imposed before the amendment. In the Wear case the decedent's will expressly exercised the power. In this case the will, by necessary implication under Pennsylvania law, exercised the power. In each case the property was appointed to the same persons who were entitled to take in default of appointment. What was said, therefore, in Wear v. Commissioner, supra, is most pertinent, 65 F.2d 666–667:

"The subject of the tax in this case is the exercise of a general power of appointment. The tax is not on the property of the power but is on the exercise of the power itself. In many states a general power of appointment, following the English rule, is regarded as an estate equivalent to out-and-out ownership of the property, or an ownership at least to the extent of subjecting it to liability for the donee's debts, and of course subjecting it to taxation [citing cases]. In Pennsylvania and in some other American jurisdictions, the rule is just the opposite. Such being the diversity of rules, we are not concerned with a question whether one is right and the other wrong, but with an altogether different question, whether a federal taxing act is to be put into effect in one jurisdiction and not in another according to the different ways in which the subject of the tax is looked upon.

"We do not believe the Congress intended, by the quoted provision of the act, that the estate tax in respect to the exercise of a general power of appointment should be imposed and collected at the will of the states or upon the accident of the citizenship of the taxpayer. * * *

"We have not been convinced that on the death of the donee nothing happened in respect to the property of the power and in respect to the daughters' right to the property by the exercise of the power. Before its exercise the daughters of the decedent, the twice named recipients, had under Pennsylvania law an estate in the property of the power. But it was a defeasible estate, not unlike the interest of a beneficiary in a policy of life insurance where the insured has reserved, yet has not exercised, the right to change the beneficiary. Their estate was liable to be wholly taken away from them by the exercise of the power in favor of others. So long as the donee lived and retained control over the disposition of the property the daughters ran that risk, which was akin to the risk of a change of beneficiaries in a policy of insurance. Not until the donee died did that risk disappear. Until then he stood in their way. Therefore it was upon his death without exercising the power adverse to them that the estate of the daughters became indefeasible. Death, with an exercise of the power in their favor, was the event that wrought the change. Then their estate, theretofore contingent upon the nonexercise of the power against them, became vested, like the interest of a beneficiary of a policy of life insurance becomes vested upon the death of the insured without exercising a reserved right to change the beneficiary, the value of which must, under the cases, be included in the gross estate of the insured for purposes of taxation. [Citing case.] The generating

292

source of the change was the death of the donee without action adverse to them. That, too, was the generating source of the tax. And such a tax, we hold, the federal government, under its sovereign power to levy taxes, may lawfully impose upon the exercise of a power effecting such a change, to be determined by actual results thereby brought about rather than by consideration of rules which define and limit title of property * * *."

In common understanding an effective exercise is one which accomplishes the result intended. Ordinarily the intended result of an exercise of appointive power is to pass the property to the appointee. Congress eliminated the requirement of passing and a judicial construction of the amended act which would require that an exercise be effective would nullify the effect of this deliberate legislative action. Wilson v. Kraemer, 2 Cir., 190 F.2d 341; Estate of Moran v. Commissioner, 16 T.C. 814.

It is concluded, therefore, that this decedent's will did exercise her power of appointment and that it is immaterial under amended Section 811(f) whether that exercise was effective to pass the property to her sons. The inclusion of the property in decedent's gross estate is made to depend, not on the effectiveness or result of the exercise, but solely on the exercise itself. This result is consistent with the general intent of the amendments to require inclusion of property in a decedent's gross estate upon the possession of the power to control disposition of the property rather than upon the passage of the property to the recipient.

The plaintiffs' motion, accordingly, is hereby denied, the defendant's motion is granted and judgment is now entered for the defendant.