Gage B. ELLIS, Jr., Elizabeth K. Ellis and Thomas E. Coe, Jr., as Executors under the Will of Gage Banks Ellis, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 17720.

United States District Court
D. Maryland.

March 13, 1968.

Theodore W. Hirsh, Jacques T. Schlenger, Edmund P. Dandridge, Jr., and Venable, Baetjer & Howard, Baltimore, Md., for plaintiffs.

Moshe Schuldinger, Donald R. Anderson, Dept. of Justice, and Mitchell Rogovin, Asst. Atty. Gen., of Washington, D. C., and Stephen H. Sachs, U. S. Atty., Baltimore, Md., for defendant.

HARVEY, District Judge:

The executors under the will of Gage B. Ellis ("the decedent") here seek to recover estate taxes in the amount of $153,251.10, together with $30,513.42 statutory interest thereon, paid by them to the District Director of Internal Revenue. Of this amount, $149,623.93 and all of the statutory interest were paid as additional estate taxes and interest following an audit of the decedent's estate tax return and a deficiency assessment by the District Director. The remainder of the amount claimed as a refund represents additional credits allegedly due the estate as a result of the payment of certain foreign death taxes.[1] After payment of the deficiency assessment, the executors duly filed a claim for refund with the District Director at Baltimore, Maryland, and thereafter timely filed suit in this Court to recover the full amount paid as well as the other amounts allegedly due plus interest.

---

[1]. The parties have not at this time submitted to the Court for determination the question as to what credits, if any, are due the estate as a result of the payment of foreign death taxes. If the parties are unable to agree as to the amount of any such credits, and also as to the amount of additional deductions for administrative expenses and legal fees, these questions may be presented to the Court at a later date for decision before the entry of final judgment in this case.

The question presented is whether at the time of his death the decedent had an outright fee interest in one-third of the property held in a certain testamentary trust created by his grandmother who died in 1925 or whether under his grandmother's will he received merely a one-third life interest in such trust together with a general testamentary power of appointment over one-third of the corpus. The plaintiffs contend that decedent received from his grandmother no more than a life interest in the property coupled with a general testamentary power of appointment, that he partially released such general power of appointment by an instrument dated February 9, 1950 and that although in his will he exercised the power as so limited, no part of the trust estate is taxable as a result of his death in 1959 in view of the provisions of § 2041 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 2041.[2] The government maintains that under applicable Pennsylvania law the decedent received from his grandmother at her death a fee simple interest in one-third of the property included in the trust created by her will and that such property interest is taxable under § 2033 of the Code, 26 U.S.C.A. § 2033.[3] In the alternative, the government contends that if effect is given to the instrument executed by the decedent on February 9, 1950, the property in question must be taxed under § 2036 of the Code, 26 U.S.C.A. § 2036, as a transfer made by the decedent under which he retained for life the right to income and the right to designate the persons who should later possess or enjoy the property.[4]

2. For the year in question, the applicable statutory provision was as follows:
"§ 2041. *Powers of appointment.*
"(a) *In General.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—
(1) *Powers of appointment created on or before October 21, 1942.*—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—
(A) by will, or
(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;
but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—
(i) such partial release occurred before November 1, 1951.
* * * * *
"(b) *Definitions.*—For purposes of subsection (a)—
(1) *General power of appointment.*—The term 'general power of appointment' means a power which is exercis-able in favor of the decedent, his estate, his creditors, or the creditors of his estate; * * *."

3. This section provided as follows:
"§ 2033. *Property in which the decedent had an interest.*
The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the exent of the interest therein of the decedent at the time of his death."

4. § 2036 provided, in part, as follows:
"§ 2036. *Transfers with retained life estate.*
(a) *General Rule.*—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—
(1) the possession or enjoyment of, or the right to the income from, the property, or
(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom."
* * * * *

## Facts

Mary A. Ellis, decedent's grandmother, died on December 9, 1925 leaving a will dated March 9, 1921, a first codicil dated May 15, 1925 and a second codicil dated November 21, 1925. At the time of her death, Mary A. Ellis was a resident of Philadelphia County, Pennsylvania, and her estate was probated in the Orphans' Court of that County. Under the SIXTH ITEM of her original will, her entire residuary estate was left in trust to her brother, Charles R. Adams, and the Land Title and Trust Company with the income to be paid to her brother during his life and the remainder outright to her three grandchildren and their survivors, share and share alike. By her first codicil, Mary A. Ellis made the following change in her original will:

"I revoke the SIXTH ITEM of my Will and instead thereof, do direct that the part of my estate which I received from my mother, shall be paid and given to my brother Charles R. Adams and the Land Title and Trust Company of Philadelphia, in Trust to collect, take and receive the income thereof and pay the net income thereof, unto my said brother Charles R. Adams for and during the full term of his life and upon his death to turn over into the remainder of my estate the principal of this Trust for the purposes hereinafter provided.

"I give and bequeath unto Charles B. Harding the sum of Ten Thousand Dollars ($10,000.) absolutely.

"All the rest, residue and remainder of my estate, real, personal and mixed, I do give, devise and bequeath unto my friend and Attorney Charles B. Harding and the Land Title and Trust Company of Philadelphia in Trust to invest and reinvest and to take, collect and receive the income thereof, and from the net income to pay unto each of my grand-children one equal third part thereof, during their respective natural lives, and upon their respective deaths, *to pay and distribute one equal third part of the principal in such manner and for such purpose and to such person or persons as each of my said grand-children may by his will in writing, direct, limit and appoint.*" (Emphasis added)

By her second codicil, Mary A. Ellis appointed her grandson Frank as an additional trustee when he attained the age of 21 so that "for his life he will keep in touch with all matters connected with my estate." Mary A. Ellis was survived by her brother, Charles R. Adams, and by three grandchildren, namely, the decedent, Frank H. Ellis, III and Augusta W. E. Little. The residuary trust created by the will of Mary A. Ellis has since her death been held and administered under the continuing jurisdiction of the Orphans' Court of Philadelphia County, Pennsylvania.

On February 9, 1950, the decedent executed in writing and delivered to his brother Frank H. Ellis III, and Land Title Bank and Trust Company, who were the surviving trustees of the Mary A. Ellis residuary trust, a writing which after referring to such trust and reciting the provisions of the will creating it, provided in part as follows:

"WHEREAS, GAGE B. ELLIS now desires to formally and finally release the said power in such manner as to reduce or limit the persons or classes of persons in whose favor such power may be exercised so that said power shall be exercisable only in favor of the persons or classes of person hereinafter enumerated.

"NOW, THEREFORE, I, GAGE B. ELLIS, of the Village Farm, Newton, Pennsylvania, do hereby formally, and irrevocably release and relinquish my right to exercise the power of appointment aofresaid (*sic*) by appointing any part of the income or principal of the said Trust to or for the benefit of my estate my creditors or the creditors of my estate or to or for the benefit of any person or class of persons other than:

(a) My wife who may survive me,

(b) Descendants of mine and the spouses of such descendants,

(c) Descendants (other than myself) of my late grand-mother, MARY A. ELLIS, the grantor of said power and the spouses of such descendants,

(d) Such public religious, charitable, scientific, literary or educational donees, transfers or bequests to or for the use of which may be deductible from the gross estate of a decedent under the applicable provisions of the statutes of the United States relating to the estate tax."

On August 29, 1959, the decedent died survived by his wife and three children. The decedent left a will dated February 9, 1950 and two codicils dated March 2, 1950 and March 3, 1959. Under Paragraph FOURTH of his will, the decedent provided for the appointment of all the property "over which I have the power of appointment by virtue of the provisions of the will of my grandmother, Mary A. Ellis," to his trustees, to pay the net income to his wife for life with the remainders passing absolutely to his three children in equal shares.

At the date of the decedent's death, both his brother and his sister were still living, and his grandmother's trust then had a fair market value of over three million dollars. After an accounting, it was determined that one-third of the corpus of the trust had a value of $991,852.51 on August 29, 1959. It is this latter figure which the government claims should have been included in the decedent's gross estate for federal estate tax purposes.

### Discussion

If the decedent received under his grandmother's will a one-third life interest in the trust thereby created with a general power to appoint by will one-third of the corpus of such trust, the property subject to such power would not under the circumstances of this case be taxable in view of the provisions of § 2041 of the Code. As the donee of a general power of appointment, he would be permitted under § 2041 to avoid estate tax consequences by partially releasing such power before November 1, 1951, inasmuch as the power in question was created before October 21, 1942.[5] The instrument executed by the decedent on February 9, 1950 fully complied with the requirements of § 2041 and the applicable Regulations as to a permissible partial release of a general power of appointment. Therefore, if at the time of his grandmother's death in 1925 the decedent possessed a true general testamentary power of appointment, it is clear that he possessed at his death in 1959 merely a limited power, the exercise of which would not have the effect of requiring the inclusion of the property subject to the power in his gross estate.

■ A careful reading of the will and codicils of Mary A. Ellis leaves little doubt that her intention was to give her grandchildren life estates in the residuary trust she created together with general testamentary powers of appointment. Under the terms of her original will executed in 1921, her brother was to receive the income from the residuary trust, and upon his death her three grandchildren were to receive outright remainders. In her first codicil executed in March of 1925, she changed this dispositive plan, and gave her brother a life interest in a separate trust composed of property received from her mother. She then created a residuary trust, giving equal life interests in such trust to her three grandchildren and directing that upon their respective deaths the trustees were to distribute one equal third part of the principal "in such manner and for such purpose and to such person or persons as each of my said grandchildren

---

5. § 20.2041–2(e) of the Regulations provides as follows:

"(e) *Partial Release.* If a general power of appointment created on or before October 21, 1942, is partially released so that it is not thereafter a general power of appointment, a subsequent exercise of the partially released power is not an exercise of a general power of appointment if the partial release occurs before * * * (1) November 1, 1951 * * * *"

may by his will in writing, direct, limit and appoint." She further provided in her second codicil, executed in November of 1925, that her grandson Frank should become an additional trustee when he reached the age of 21 so that he might during his life "keep in touch with all matters" connected with such trust estate. Clearly, the provisions of these three instruments, when read together, show that Mary A. Ellis did not intend that her three grandchildren should take outright fee simple interests in her residuary estate when she died.

■■■ The government, however, contends that any such intention by this testatrix to give her grandchildren equitable life estates coupled with general testamentary powers of appointment is overcome by applicable principles of Pennsylvania law which would require this Court to find that each grandchild in fact received an outright fee simple interest in one-third of the residuary estate. In the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property sought to be reached by the statute. Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585 (1940). As the Supreme Court said in that case at pages 80–81, 60 S.Ct. at page 426:

> "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed. Our duty is to ascertain the meaning of the words used to specify the thing taxed."

■ The parties agree that the nature of the property interest owned by the decedent in this case at the time of his death must be determined under Pennsylvania law. Resort must therefore be had to decisions of the Supreme Court of Pennsylvania. Where the underlying substantive rule involved in a tax case is based on state law, the state's highest court is the best authority on such law. Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967).

In particular, the government relies on the decision of the Supreme Court of Pennsylvania in Lyon v. Alexander, 304 Pa. 288, 156 A. 84, 76 A.L.R. 1427 (1931). It is claimed that this case establishes as the law of Pennsylvania that one possessed of a life estate coupled with a general power of appointment owns an interest amounting to a fee simple title where no provision has been made for takers in default of appointment. Because of the great importance which the government attaches to Lyon and to later Pennsylvania cases which cite Lyon, a close look at this decision is in order.

In the Lyon case, the question before the Court was whether the plaintiffs could convey to the defendant a fee simple title to certain real estate which the defendant had agreed to purchase. The plaintiffs were two brothers and a sister who derived their interest in the real estate in question from their deceased mother. The mother's will provided, in part, as follows:

> "The real estate I now own on Sewickley Heights, in the County of Allegheny and State of Pennsylvania, which I purchased from D. T. Watson, and which contains about twenty-six (26 A.) acres, I now devise to my daughter, Maude Byers Lyon, for and during her natural life, and from and after her death to my oldest son who shall then be alive, and to his heirs. If Maude should outlive all my sons, then I empower her by her last will to devise said property as she sees proper, but I impress on her and on my sons that as far as may be I desire the place to be kept in the family and like unto a family home. But I do not intend by this expression of desire to hamper or encumber or impose any trust whatever upon the absolute fee simple title I by this will give to my children in said property."

In deciding that the deed from the three plaintiffs conferred an absolute fee simple title upon the defendant, the Supreme Court of Pennsylvania held that the donee of a general testamentary power of appointment has the right to ex-

tinguish it by deed. In discussing the differences between general and special powers, the Court said the following (156 A. at p. 85):

> "The general are those in which the donee of the power may appoint to any one, and the special, in which the donee of the power is restricted to passing on the property to certain specified individuals or to a specific class of individuals. In the latter case, there is a sound reason why the repository of the power should not be permitted to extinguish it, because the testator has indicated the persons to whom the property shall go, and there is reposed in the appointee of the power a confidence, something partaking of the nature of a trust; but where the power is a general one, under which the donee may appoint to any one, the testator has completely relinquished all dead hand dominion over the property, and has placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him. There is neither a trust nor an obligation in the nature of a trust, because the power is not coupled with a duty."

Pointing to the Court's statement that in creating such an interest a testator has placed the property "for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him", the government argues that under circumstances such as are here present the donee of a general power of appointment has an absolute fee simple interest in the property. In further support of its position, the government cites the later Pennsylvania decisions of In re Curran's Estate, 312 Pa. 146, 167 A. 597 (1933). In re Perkins' Trust Estate, 314 Pa. 49, 170 A. 255 (1934), and In re Wilbur's Estate, 334 Pa. 45, 5 A.2d 325 (1939).

Both *Curran's Estate* and *Perkins' Trust Estate* were surcharge cases in which attempts were made to charge trustees for losses to the trust estates resulting from improvident or improper investments. In both cases, the Court held that appointees under general powers of appointment were bound by acts of the donees of the powers in consenting to the challenged trust investments. In Curran's Estate, the Court said (167 A. at p. 599):

> "The life tenant, having the general power of appointment, in a sense had complete dominion over the property (Lyon v. Alexander, 304 Pa. 288, 156 A. 84, 76 A.L.R. 1427), as she could appoint to her own estate."

In *Perkins' Trust Estate*, the Court, citing *Lyon*, approved the following statement made by the lower court judge (170 A. at p. 256):

> " * * * a life tenant with a general power of appointment has an estate tantamount to a fee * * * "

The question before the Court in *Wilbur's Estate* was whether the record contained facts supporting (1) the lower court's order charging two trust estates with the fees of counsel for the exceptant, and (2) the payment of auditors' fees in the amounts awarded. In analysing the various property interests involved, the Court noted that the exceptant's husband took a life estate under each of his parents' wills with a general power of appointment and that he exercised such powers in favor of his widow. Citing *Lyon, Curran's Estate* and *Perkins' Trust Estate*, the court said the following (5 A.2d at p. 330):

> "A life tenant with a general power of appointment has an estate tantamount to a fee; no one but the donee has any interest in such a power."

Whatever may be the precise holding of these cases, they do not even by way of dictum support the government's position in the pending case. The most that can be said for the decisions relied upon by the government is that they refer to the proposition that the owner of a life estate coupled with a general testamentary power of appointment has dominion and control over the property subject to the power similar to what he would have if he possessed a fee interest.

That the decedent in the present case possessed at his grandmother's death a property interest which was tantamount to a fee does not dispose of the question before this Court. Neither *Lyon* nor any other decision of the Supreme Court of Pennsylvania cited to this Court even remotely suggests that an interest such as the one that decedent received from his grandmother is *not* a power of appointment. On the contrary, in each of the Pennsylvania cases relied upon by the government, that a power of appointment is involved is not questioned, and in *Lyon* the Court discusses at some length the differences between general and special powers.

 Even though the possessor of a property interest may deal with the property, in the words of *Lyon* "as though a fee had been created in him", such interest for federal estate tax purposes would still be controlled by the provisions of § 2041 of the Code if it were a power of appointment under state law and under such statutory provisions. There is little doubt that the donee of a general power of appointment exercisable by deed or will can deal with the property subject to such power as if he had absolute ownership. However, if such power of appointment were created before October 21, 1942, and if it were properly released before November 1, 1951 in accordance with § 2041, no estate tax consequences result to the donee even if the partially released power is finally exercised in his will. The Supreme Court in Morgan v. Commissioner of Internal Revenue, supra, used language similar to that of *Lyon* in referring to the attributes of a general power of appointment. At page 81 of 309 U.S., at page 426, of 60 S.Ct., the Court said:

"The distinction usually made between a general and a special power lies in the circumstance that, under the former, the donee may appoint to anyone, including his own estate or his creditors, *thus having as full dominion over the property as if he owned it*; where-

as, under the latter, the donee may appoint only amongst a restricted or designated class of persons other than himself." (Emphasis added)

In Helvering v. Safe Deposit and Trust Co., 316 U.S. 56, 62 S.Ct. 925, 86 L.Ed. 1266 (1942), the decedent possessed under certain trusts testamentary powers of appointment over the trust properties as well as the right to receive portions of the income before he reached the age of 28 and all of the trust properties with accumulated income after he attained that age. In contending that when he died before reaching 28, the corpus of the trust properties should have been included in the decedent's gross estate under § 203(a) of the Revenue Act of 1926 (the forerunner of the present § 2033), the government argued, as it does here, that the rights possessed by the decedent were attributes of ownership substantially equivalent to a fee simple title and therefore includible as a part of the gross estate. The Supreme Court rejected such argument, holding that an unexercised power of appointment did not give the donee such an interest in the trust property as to make it a part of his gross estate under the generic statutory provision requiring the inclusion of all property to the extent of the interest therein of the decedent at the time of his death.

 In enacting § 2041, Congress clearly intended to permit the donee of a general power of appointment created before October 21, 1942 to escape estate tax liability even though exercising the power, provided that he complied with the provisions of the statute as to partial release within the time period specified. The fact that the donee of such a power might possess all the incidents of a fee is clearly irrelevant if under state law the interest in question is in fact a power of appointment. Congress recognized these attributes of a general power of appointment when it enacted the Revenue Act of 1919 (40 Stat. 1097, effective February 24, 1919), which first introduced a power of appointment section into the estate tax

law.[6] In its report recommending the amendment of the law by the 1919 Act, the House Ways and Means Committee said the following (H.R.Rep. No. 767, 65th Cong., 2d Sess., p. 21):

"A person having a general power of appointment is, with respect to disposition of the property at his death, *in a position not unlike that of its owner.* The possessor of the power has full authority to dispose of the property at his death, and there seems to be no reason why the privilege which he exercises should not be taxed in the same degree as other property over which he exercises the same authority." (Emphasis added)

After a review of all the decisions of the Supreme Court of Pennsylvania that have been cited by the parties, this Court concludes that the courts of that State would hold that the property interest here was a true testamentary power of appointment and not a fee interest. In Nelson v. Johnson, 354 Pa. 512, 47 A.2d 650 (1946), the plaintiff's title was derived from her mother whose will had left all of the property of the testatrix to her daughter "to have and to hold during her lifetime, and to do with as she may see fit at her death." The lower court held that this provision vested in the daughter a fee simple estate. Although affirming the lower court on other grounds, the Supreme Court of Pennsylvania rejected this reason as a ground for the decision, saying the following (47 A.2d at page 651):

"It has been definitely held, however, that the devise of a life estate with power of appointment or disposal at death is not a gift in fee simple. Schoyer v. Kay, 217 Pa. 32, 66 A. 141; In re Terppe's Estate, 224 Pa. 482, 73 A. 922; Early v. Coleman, 34 Pa. Super. 267."

In McCreary's Trust Estate v. Pitts, 354 Pa. 347, 47 A.2d 235 (1946), the Court in affirming the lower court's decision in a perpetuities case adopted the opinion of the judge below. In such opinion, the following was said (47 A.2d at p. 237):

"The statement in Lyon v. Alexander, 304 Pa. 288, 156 A. 84, 85, 76 A.L.R. 1427, that 'where the power is a general one, under which the donee may appoint to anyone, the testator has completely relinquished all dead hand dominion over the property, and has placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him,' applies only to the rights of appointees. That case gave to the donee the right to extinguish a power, but the extinguishment was a confirmation and not a destruction of the interests of the remainderman who would take in default of its exercise."

The government attaches particular significance to the fact that in *Lyon* and also in the present case the wills in question provided for no gift over in default of appointment. There is no language in the *Lyon* opinion indicating that the absence of such a gift over results in the conversion of a life estate coupled with a general testamentary power of appointment into a fee interest. Rather, it would appear that the Court's determination in *Lyon* that the plaintiffs could convey an absolute fee simple title was required by express language in the mother's will stating her intention not to hamper or encumber or impose any trust whatever "upon the absolute fee simple title I by this will give to my children in said property." No such language is to be found in the will of Mary A. Ellis.

In several cases cited by the government, courts, in declining to find that the possession of a life estate coupled with a general power of appointment constituted a fee interest, have noted the presence of

---

6. In United States v. Field, 255 U.S. 257, 41 S.Ct. 256, 65 L.Ed. 617 (1921), the Supreme Court held that the original generic provisions of the Revenue Act of 1916 did not require the inclusion in a gross estate of property passing under a general power of appointment. See also Fidelity-Philadelphia Trust Co. v. McCaughn, 34 F.2d 600 (3d Cir. 1929).

a gift over in default of appointment.[7] In re Warren's Estate, 320 Pa. 112, 120–121, 182 A. 396, 399–400, 104 A.L.R. 1345 (1936); Barclay v. United States, 175 F.2d 48, 50 (3d Cir. 1949); Keating v. Mayer, 136 F.Supp. 286, 288 (E.D.Pa. 1955). However, these cases do not hold that in the absence of such a gift over a person possessed of a life estate coupled with a general power of appointment has an interest amounting to an absolute fee simple title. In the *Barclay* case, the Third Circuit Court of Appeals affirmed the decision of the District Court finding property subject to a general power of appointment to be taxable under § 302(f) of the Revenue Act of 1926.[8] The Circuit Court, in finding that the decedent had in fact exercised the general power of appointment, expressly disapproved of the lower court's interpretation of Pennsylvania law. The Court said the following at page 50 of 175 F.2d:

> "The court below [Barclay v. United States], 73 F.Supp. [816] at page 819, seemed to take the position that the decedent was a 'life tenant having a general power of appointment' and therefore had 'an estate equivalent to a fee', citing inter alia In re Perkins' Trust Estate, 314 Pa. 49, 170 A. 255, and In re Wilbur's Estate, 334 Pa. 45, 5 A.2d 325. But the decedent did not have a life estate coupled with a power of appointment. She had an estate for years in the income from the trust. The trustees held the corpus subject to the termination of the trust within twenty-one years or at an earlier date if the trustees should so determine. The decedent did have a general power of appointment over her share of the corpus. By will she could appoint to whomever she pleased including her own estate. The cases cited by the court below therefore are inapposite and the principle cited by the learned trial judge cannot rule the case at bar. * * * "

■ Furthermore, none of these cases suggest that an interest such as the one that the decedent here received from his grandmother is not, under Pennsylvania law, a power of appointment. The taxation of property subject to a *power of appointment* is controlled by § 2041 and not by § 2033, whether or not the donee of the power had dominion and control over the property as if he owned it. The provisions of § 2041 as to partial release would be rendered meaningless if a general power of appointment that had been properly limited could be taxed under § 2033 or under § 2036. The generic sections of the law which are the predecessors of § 2033 have generally been interpreted to exclude all powers of appointment, whether exercised or not and whether general or nongeneral. See Helvering v. Safe Deposit and Trust Co., supra, 316 U.S. at page 62, 62 S.Ct. 925; Helvering v. Grinnell, 294 U.S. 153, 55 S. Ct. 354, 79 L.Ed. 825 (1935); Rothensies v. Fidelity-Philadelphia Trust Company, 112 F.2d 758 (3d Cir. 1940); Mertens, Estate and Gift Taxation, § 14.42, p. 241.

■ For the reasons stated, it is concluded that the decedent took from his grandmother at her death a one-third life interest in the residuary trust created by her will coupled with a general testamentary power to appoint one-third of the corpus of such trust, that he partially released such general power of appointment on February 9, 1950, and that by his will he exercised the power as so limited. Pursuant to the provisions of § 2041, the

---

7. Although there was no gift over in default of appointment in the will of Mary A. Ellis, there would appear to be a gift over by operation of law. In accordance with the provisions of Section 15 (c) of the Wills Act of 1917, P.L. 403, App.Purdon's Statutes, Title 20, Chapter 2, the other residuary legatees (the decedent's brother and sister) would in default of appointment take the property not as heirs of their grandmother but under the residuary clause of the will.

8. The government claimed taxability under both § 302(a) and § 302(f) of the Act (the predecessors of the present § 2033 and § 2041 respectively). It should be noted that § 302(f) of the Revenue Act of 1926 contained no provisions permitting partial release of a general power of appointment.

trust property subject to such power is not includible in the decedent's gross estate for federal estate tax purposes. Judgment will accordingly be entered in favor of the plaintiffs with interest. Counsel should agree on the amount of such judgment and submit promptly an appropriate order.