ESTATE OF SARAH V. MORAN, DECEASED, ARCHIBALD A. MORAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 27701.   Promulgated April 19, 1951.

*Ronald A. Gulick, Esq.*, for the petitioner.
*Stanley W. Herzfeld, Esq.*, for the respondent.

### OPINION.

DISNEY, *Judge:* Estate tax is involved in this case.   Deficiency was determined in the amount of $11,899.58.   The question for determination is whether the Commissioner erred in including in decedent's gross estate the value of corpus and accumulated income of two trusts, within section 811 (c) and (f) of the Internal Revenue Code.   Except for the admission in evidence of the estate tax return, filed for the estate of Sarah V. Moran, all facts were stipulated.   We adopt the stipulation by reference and find all facts as stipulated, and further find that there were not included in the estate tax return any amounts representing the value at date of decedent's death of corpus and accumulated income of either a trust created by her on August 29, 1896, or a trust created on October 21, 1920, by her husband.   The facts will be set forth only so far as regarded necessary in discussion of the issue presented.

The petitioner here is the executor of the estate of Sarah V. Moran, deceased, who died December 11, 1947, leaving a last will and testament duly admitted to probate.   The estate tax return for her estate

was filed with the collector for the fifth collection district of New Jersey at Newark, New Jersey.

On August 29, 1896, the decedent created a trust with Knickerbocker Trust Company (now known as Irving Trust Company of New York City) as trustee, providing that the income from $5,000 should be paid to her during life and upon her death the corpus and accumulated income should be paid to such person or persons as she by her will should appoint and in default of such appointment to her issue then surviving her in equal shares *per stirpes* and not *per capita.*

On October 21, 1920, Daniel E. Moran, decedent's husband, created a trust with the Bank of America (now City Bank Farmers Trust Company) as trustee, providing that the net income should be paid to the decedent during her natural life and that upon her death the trust corpus and accumulated income should be paid to such persons as the decedent by her will should nominate or appoint and in default of such nomination or appointment in equal shares to the decedent's surviving children and the issue of any deceased child, *per stirpes* and not *per capita.*

Decedent's last will and testament provided in pertinent part as follows:

All the rest, residue and remainder of my estate, whether real, personal or mixed, legal or equitable, vested or contingent, tangible or intangible, of whatsoever kind and wheresoever situate, of which I may be possessed at the time of my death, or to which I may be entitled in law or in equity at the time of my death, or over which I have power of appointment at the time of my death, I give, devise, bequeath and appoint to my children, SARAH SYLVESTER FRASER, DANIEL E. MORAN, DOROTHY ANN BRICKEN, ARCHIBALD A. MORAN and HUGH B. MORAN, to them and their heirs forever, equally, share and share alike. In the event that any of my said children shall predecease me, or die under such circumstances as to make it uncertain which of us shall have died first, leaving issue him or her surviving, then the issue then surviving shall take the share which its parent would have had had such parent not predeceased me or not died under such circumstances as to make it uncertain which of us shall have died first, per stirpes and not per capita.

The five children named in the will survived the decedent. After decedent's death they elected in writing to renounce "any rights under the alleged appointment in the Will and elect to take as remaindermen" of each of the trusts above mentioned. In accordance with such elections, and pursuant to receipts and releases executed by the five children, the trustees of both trusts delivered to the children, one-fifth to each, the corpus and accumulated income thereof. The amounts, the parties hereto agree, were as of the date of death of the decedent $35,114.55 as to the trust dated October 21, 1920, and $5,063.54 as to the trust dated August 29, 1896. These the Commissioner included in gross estate.

The receipts and releases executed by the children with reference to the trust of October 21, 1920, provided, in part, that each represented that there were sufficient monies belonging to the decedent and con-. stituting part of her estate to enable payment to be made of all funeral and administration expenses, debts, and taxes, as well as for payment of all pecuniary legacies mentioned in the will, and further that each agreed to indemnify and hold harmless the trustee for any taxes or penalties which the trustee should be required to pay; and in the case of the trust of August 29, 1896, the receipts and releases from the children provided that the executor indemnify the trustee as to estate, transfer, and inheritance .taxes and distribution of the trust estate, that the children approved, ratified, and confirmed such action by the executor, and that each jointly and severally indemnified the trustee from all charges, claims or demands by reason of distribution of principal and income to the children, and more particularly as to any inheritance, estate or transfer tax.

Prior to the Revenue Act of 1942, section 403 (a), section 811 (f) of the Internal Revenue Code provided that there should be included in a decedent's estate "any property passing under a general power of appointment exercised by the decedent" by will. *Helvering* v. *Grinnell*, 294 U. S. 153, held that in that case "clearly the general power existed and was exercised," but "it is equally clear that no property passed under the power as a result of its exercise," since the beneficiaries had elected to take under a "distinct and separate title," i. e., under the will creating the trust, which will provide that they take in default of appointment. Thus, it is clear that the test, under the former law, was passage of title under the appointment, and not merely exercise of the power of appointment, and that renunciation by the beneficiaries of rights under the appointment duly made did not mean that it was not exercised.

By section 403 (a), Revenue Act of 1942, a new rule was provided, that is, that there should be included in a decedent's gross estate "any property with respect to which the decedent has at the time of his death a power of appointment," and power of appointment is defined as "any power to appoint exercisable by the decedent * * *" In short, under section 403 (a), the mere right to appoint, regardless of exercise or passage of title thereunder, causes inclusion of the property in gross estate. However, section 403 (d) (3) provided that the amendments, i. e., section 403 (a) so far as here pertinent, should not be applicable to a power created on or prior to date of enactment of section 403 (a), if it is released before January 1, 1943, or if the decedent dies before January 1, 1943, "and such power is not exercised." By several later statutes the date January 1, 1943, is extended to July 1, 1951. The two powers here involved were both created prior to

1942, and the decedent died in 1947. Thus, it is seen that the new rule, promulgated in 1942, is not here applicable, within the terms of section 403 (d) (3), unless the power was "exercised."

The gist of the petitioner's position here is that there must be exercise of the power within the test of the *Grinnell* case, that is, that the property must pass under the exercise of the power, and that since the beneficiaries could, and elected to, take under the will of the original donor despite the decedent's alleged exercise of the power, in her will, the property can not properly be included in her gross estate. The respondent's view is (in part pertinent, considering our conclusion below) that the new statute requires no passage of property under the appointment, no effective exercise of power by the decedent, but only that the power be "exercised," and that decedent did in her will exercise it, moreover, that the power was effectively exercised and the property passed under it, because the property was by the will thrown into decedent's residuary estate, with attendant burdens, from which it would have been free had the will not exercised the power, so that a different title passed from what would have passed in case of no exercise of power by the will.

We have examined carefully the interesting question presented, and the cases cited, and after much study we conclude that we should sustain the respondent's first view that, in order to make effective the new rule adopted in 1942, there need be no passage of title under the power, no effective exercise, in the sense of being effective in spite of renunciation by the recipients named, but only that the power be exercised—as it clearly was by decedent's will, for she said that the "rest, residue and remainder of my estate   *   *   *   over which I have power of appointment   *   *   *   I give, devise, bequeath and appoint   *   *   *." The power was exercised here just as in the *Grinnell* case the court said it was—though holding that nevertheless the property did not pass thereunder, within the statutory language, because of the rejection of title under the power, by the beneficiaries. That only exercise of power, and not exercise effective to pass title, in the face of renunciation by recipients designated, is fairly required by section 403 (d) (2) of the 1942 Act is indicated, first, by the fact that, after the *Grinnell* decision—in 1935—Congress in 1942 can not reasonably have been unconscious of the necessity of expressing exercise sufficient to pass title, as under the former statute, had it so intended; second, because the old statute expressly requires "passing" of title under the power and the new law pointedly omits that language, saying "exercised" instead of the former language: "passing under a general power of appointment exercised   *   *   *"; and, third, because Regulations 105, section 81.24 as amended by T. D. 5239 in 1943

to conform to the Revenue Act of 1942 (1943 C. B. 1081) provides in pertinent part that:

* * * A power to appoint is exercised where the property subject thereto is appointed to the taker in default of appointment regardless of whether or not the appointed interest and the interest in default of appointment are identical, and regardless of whether or not the appointees renounce any right to take under the appointment.

This regulation is to be considered as having the effect of law, for section 403 (d) (3) has since been repeatedly amended, without change in the language as to the phrase "and such power is not exercised." *Helvering* v. *R. J. Reynolds Tobacco Co.*, 306 U. S. 110. The fact that in the *Grinnell* case the Supreme Court relied on the necessity, within the text of the then statute, for "passing" of property if it was to be included in gross estate, renders it obvious that, under the Revenue Act of 1942, requiring only the power of appointment, and, as to powers set up prior to that time, merely that they be exercised, no passing of property to unwilling appointees is necessary. We see no reason for application here of the prior rule, based on the word "passing," but rather that it is affirmatively shown, by the text of the new statute, to be here inapplicable. We conclude and hold that the power of appointment, duly and expressly exercised by the decedent in her will, was exercised within the intendment of section 403 (d) (3), irrespective as to whether it was effective to pass the property despite renunciation by the designated beneficiaries.

However, we also believe that it was so effective. There was in these facts no case where one "merely echoes the limitations over upon default of appointment" within the expression in *Rogers' Estate* v. *Helvering*, 320 U. S. 410, upon which petitioner relies—though conceding it to be dictum. Here the interests created by the decedent's exercise of her power of appointment were not the same as those which would have existed in default of appointment. By exercising her power she caused the property to pass through her estate. *White* v. *Graves*, 104 A. 205; *Cooper* v. *Haines*, 17 A. 79. Though the petitioner seeks to distinguish *Guaranty Trust Co. of N. Y.* v. *Johnson*, 165 F. 2d 298, because therein the property was subjected to specific bequests, taxes, expenses and debts, we think that on the *ratio decidendi* of the court it is not distinguishable from the instant case, for here the decedent included the property over which she had power of appointment in her residuary estate, as in the *Guaranty Trust* case, and the court there says:

That the decedent did "exercise" the power in the sense that she expressly made the trust corpus part of her residuary estate, for the disposition of which she provided, is abundantly clear. * * * She herself expressly included the trust corpus in her gross estate. Having done so, it became a part of her gross estate both for purposes of distribution so far as possible in accordance with the terms of her will and for purposes of taxation like any other part of her gross

estate. That it so happened that at her death the appointed property was neither needed nor used to pay any specific legacies or charges is quite irrelevant. What was said in Estate of Rogers v. Commissioner, 320 U. S. 410, at page 413, 64 S. Ct. 172, 174, 88 L. Ed. 134, seems particularly apt here. "For the purpose of ascertaining the corpus on which an estate tax is to be assessed, what is decisive is what values were included in dispositions made by a decedent, values which but for such dispositions could not have existed. That other values, whether worth more or less as to some of the beneficiaries, would have ripened into enjoyment if a testator had not exercised his privilege of transmitting property does not alter the fact that he and no one else did transmit property which was his to do with as he willed. And that is precisely what the federal estate tax hits—an exercise of the privilege of directing the course of property after a man's death."

In this connection we note that the decedent here by her will took care of the possible event that she and any of the children should die under such circumstances as to make it uncertain which had died first—a contingency not provided for in the trust set up by the original donor in the case of either of the trusts here involved. This appears as effective exercise of the power and not mere echo over as if there were default in appointment. Moreover, the trusts provided that in default of appointment the trust corpus should go to decedent's children and issue of any deceased child *per stirpes*, in the trust of October 21, 1920, and to her issue *per stirpes* in the trust of 1896, whereas the provision in her will was that she gave, devised, bequeathed and appointed to them and their heirs. Though immediately following is the provision that if a child predeceases her leaving issue such issue would take the child's share, it is apparent that in the absence of such issue of a child, such child's heirs, e. g., a wife, would take under the preceding language of the will. That is not within the provisions of the trusts; and again we see that there is no mere echo of the trust provisions. Likewise, the provision in the trust of 1896 was that the corpus after her death would be distributed to "her issue her surviving" *per stirpes*—no provision being made as to her non-surviving issue or their issue or heirs; yet the will specifically provides for the issue of any child predeceasing her. Obviously, these provisions disclose not only absence of mere echoing over, but express disposition of property by the decedent; and the *Guaranty Trust Co.* v. *Johnson* case, *supra*, therefore fully applies. That it involved specific charges upon the appointed property shows no controlling distinction, for in both cases there is affirmative action, in the will, directing the devolution of the property other than provided in the trusts. The above mentioned provisions in decedent's will, not covered by the trusts, also make applicable the conclusion in the *Rogers'* case, *supra:*

* * * To suggest that all the property necessary to effectuate the arrangements made by decedent's will did not constitute property passing under his testamentary power would disregard the fact that he had complete dominion over this property and disposed of all of it as his fancy, not at all as his father's

will, dictated. Indulgence of that testamentary fancy to the full extent assessed by the Commissioner is what § 302 (f) taxes.

In *Wilson* v. *Kraemer*, D. C. Conn. (July 18, 1950), it was held that a pre-1942 power of appointment was exercised, in 1944, by a provision of a will of the holder of the power, purporting to exercise the power, and appointing $20,000 to various persons and the remainder to his daughter, though she as his only descendant would have taken under the provision of the trust creating the power. She renounced under the power. The court discusses but does not follow the argument, made there as here, that "exercise" means effective exercise, passing the property. The court finds, in effect, that the argument is inconsistent with the objectives of Congress in amending the statute in 1942, and refers, as "perhaps most persuasive" as to Congressional intent, to the repeated extension by statute, after the interpretation, by regulation to which we above refer, by the Treasury.

The other cases cited do not, in our opinion, involve the present problem. Petitioner on brief concedes that none meet the present issue squarely.

We conclude and hold that the Commissioner did not err in including the corpus and accumulated income, in the amounts agreed on, in the gross estate of the decedent. This conclusion renders it unnecessary to consider other views advanced by the respondent.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

RAUM, *J.*, concurs only in the result.