ESTATE OF SEDGWICK MINOT, DECEASED, WILLIAM E. DWYER, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 666-64. Filed March 23, 1966.

*H. Brian Holland*, for the petitioner.
*J. Frost Walker, Jr.*, for the respondent.

BRUCE, *Judge:* Respondent determined a deficiency in estate tax in the amount of $337,671.40. Certain issues raised in the pleadings have

---

been conceded by the parties. The sole remaining issue is whether the assets of two trusts are includable in the gross estate.

FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Sedgwick Minot (hereinafter referred to as decedent) died on April 18, 1959, in Hollywood, Calif. The Federal estate tax return for the Estate of Sedgwick Minot (hereinafter referred to as petitioner) was filed with the district director of internal revenue at Los Angeles, Calif., by William E. Dwyer (hereinafter referred to as Dwyer), duly appointed executor of the estate.

William Minot (sometimes hereinafter referred to as William) died testate on November 30, 1900, a resident of Boston, Mass. Decedent was a son of William.

In a trust indenture dated February 15, 1900, William created a trust of certain assets and, after providing for the payment of certain minor annuities, directed that the net income from the trust assets be paid to his four children then living in equal shares during their natural lives and further, that upon the death of each child the portion of the principal of the trust corresponding to his share in the net income be transferred to such person or persons as the deceased child by will appointed, or in default of appointment, to the deceased child's then-living issue.

In a will dated February 15, 1900, which was admitted to probate by the Probate Court for Suffolk County, Mass., on December 20, 1900, William devised the residue of his estate after minor bequests to certain persons in trust to be set apart in equal shares for his children living at his death, counting for one share the then-living issue of each of his children deceased at the time of his death. The trustees were directed to pay each share set apart for the issue of a deceased child to such issue by the right of representation and to pay the net income from the share set aside for each child then living to such child during his natural life. Upon the death of each child then living, his share of the trust assets was to be distributed to such person or persons as he by will appointed, or in default of appointment, to his then-living issue.

On December 27, 1916, decedent married Jane Gould (sometimes hereinafter referred to as Jane). Jane and decedent had three children: Jane Rockwell, Sedgwick, Jr., and Jerome.

On February 23, 1926, Jane and decedent entered into a separation agreement providing for the custody of their three children and certain monetary payments by decedent, and also providing in part as follows:

11—WHEREAS, under and by virtue of a certain indenture dated February 15, 1900, by and between William Minot, of the one part, and Laurence Minot, and Robert H. Gardner, Trustees, of the second part, and, whereas, also under and by

virtue of the last Will and Testament of the same William Minot, father of the party of the first part, the said party of the first part has the right, upon such terms as he shall, by Will, lawfully establish, to appoint certain trust funds to and among such person or persons as he may direct, now, therefore, said party of the first part covenants and agrees that he will, by last Will and Testament, appoint such trust funds in fee in equal shares among his surviving children and issue per stirpes of any deceased child or children, provided, however, that should by any subsequent marriage or marriages the said party of the first part have more than three children, no less than one-half of the trust funds which he may so appoint by virtue of the afore-mentioned indenture and Will shall be appointed to and among the children born of the marriage of the parties of the first and second parts, or the survivor or survivors of such children,—the surviving issue of any of such child or children that may predecease the party of the first part to receive per stirpes the share its parent would have been entitled to receive if living.

Subsequent to the execution of this agreement Jane and decedent were divorced. Decedent married a second time and his second wife, by whom he had no children, predeceased him. Decedent was survived by Jane, Jerome, and Jane Rockwell (now Jane Rockwell Minot Windom). Sedgwick, Jr., predeceased him, leaving no issue.

On May 1, 1959, two instruments executed by decedent dated June 28, 1956, and October 17, 1957, respectively, were offered for probate as decedent's last will and codicil in the Probate Court in and for the County of Suffolk, Mass. (hereinafter referred to as the Probate Court), by Dwyer, as executor named in the will. Under the terms of the two instruments, one-third of the decedent's estate, except for tangible personal property and a sum of money to be set aside for the care of a monument to the decedent and his second wife, was devised in trust to pay the income to his surviving children and to the survivor of them for life, and upon the death of the survivor to pay $50,000 of the trust principal to a named beneficiary and the balance of the corpus in equal amounts to six charities. The residue of the estate after the payment of certain specific legacies was devised to the same six charities. The second article of the instrument dated June 28, 1956, provided as follows:

SECOND: I hereby exercise all my powers of appointment in regard to all property held in trust for me at the time of my death under any and all trusts over which I have or may have a power in appointment.

On June 15, 1959, Jerome and Jane Rockwell, as contestants, each filed a motion by an attorney requesting the Probate Court to submit the following questions to a jury: (1) Whether the instruments purporting to be the last will and codicil of decedent were executed according to law; (2) whether at the time of their execution decedent was of sound mind; and (3) whether their execution had been procured by fraud or undue influence. Thereafter, counsel for Jerome and Jane Rockwell and counsel for the charitable legatees conducted negotiations toward the settlement of the will contest in which counsel for the

children, in arguing that the children were entitled to the trust assets as takers in default, relied primarily upon the allegations that the will was invalid for lack of testamentary capacity and that decedent had partially released his powers in favor of his children by his separation agreement with his first wife.

On April 15, 1960, an agreement of compromise was executed by the children, the trustees under William's trusts, the executor and trustees under decedent's will, the named beneficiary of $50,000 of the principal of the trust created by decedent's will, and the six charities. As herein material, the agreement provided as follows:

### WITNESSETH THAT

WHEREAS said instruments dated respectively June 28, 1956, and October 17, 1957, were, on or about May 4, 1959, filed and offered for probate in the Probate Court of Suffolk County, Massachusetts; and

WHEREAS the heirs have each entered an appearance in said Probate Court for the purpose of objecting to the allowance of said instruments as such last will and testament; and

WHEREAS under the above-mentioned indenture of William Minot the testator had a general testamentary power of appointment over his share of the trust principal thereunder; and in default of appointment, the said share of trust principal goes under the terms of the said indenture share and share alike to the testator's children living at his death; and

WHEREAS under the will of William Minot, the testator had a general testamentary power of appointment over the two funds (known as the No. 3 fund and the accumulated income fund) which together constituted the testator's share of the trust funds under said will; and in default of appointment, the two said funds go under the terms of the said will share and share alike to the testator's living children living at his death; and

WHEREAS under an Agreement made February 23, 1926 by and between the testator and Jane Gould Minot, the testator agreed that he would by his will appoint his share of the trust principal under the above-mentioned indenture of William Minot, and also his share of the said trust funds under the will of William Minot, to the testator's children surviving him, in equal shares; and

WHEREAS the heirs contend that even if said instruments purporting to be the testator's last will and testament were admitted to probate, they could not effectively exercise said powers of appointment for the reason that by said Agreement of February 23, 1926, the testator had released said powers; and

WHEREAS a controversy has arisen between the testator's children, on the one hand, and the charitable organizations named as residuary legatees under said purported will, on the other hand, as to the validity and effect of said purported will and codicil; and

WHEREAS the parties hereto desire to adjust such controversy, and to provide for the allowance of said instruments as the last will and testament of the testator upon the terms and conditions hereinafter set forth;

Now, THEREFORE, in consideration of the premises, said parties do hereby mutually covenant and agree as follows:

1. Said instruments dated June 28, 1956 and October 17, 1957 filed and offered for probate as aforesaid, shall be admitted to probate as the will and codicil of Sedgwick Minot, and shall be administered in conformity with the provisions of this Agreement and subject to the following modifications:

\*      \*      \*      \*      \*      \*      \*

B. The testator's 1926 agreement to appoint to his children was an effective release of his general powers of appointment under the above-mentioned indenture and will of his father, William Minot. The provisions of Article SECOND of the said instrument dated June 28, 1956, shall be given no effect and all property (other than income in the aggregate amount of $8,839.60 collected and accrued from January 1, 1959 to April 18, 1959) held in the above-mentioned trusts for the benefit of the testator under the indenture and will of William Minot shall be distributed, as in default of appointment, in equal shares to the said Jane Rockwell Minot Windom and the said Jerome Minot.

\* \* \* \* \* \* \*

E. The provisions of Article FOURTH of the testator's instrument dated June 28, 1956, shall be given no effect, and that portion of the estate which is in said Article FOURTH given to William E. Dwyer, Henry M. Channing and James B. Ames, as trustees, shall instead be added to the residue given by Article TWELFTH and shall be distributed in accordance with the terms of that Article as amended by the instrument dated October 17, 1957.

On November 17, 1960, the Probate Court, upon petitions filed on that date, entered decrees authorizing Dwyer and the trustees of the two trusts established by William to adjust the controversy in accordance with the terms and conditions set forth in the agreement for compromise. Also, on November 17, 1960, the Probate Court ordered that the instruments in issue be allowed as the last will of decedent and that Dwyer be appointed executor of the will with the direction to administer decedent's estate in accordance with the terms of the will and the agreement of compromise. The estate to be so administered was substantial.

In the Federal estate tax return filed on behalf of petitioner, no part of the corpus of the two trusts established by William was included in the gross estate. In his statutory notice of deficiency respondent determined that part of the assets of each trust was includable in the gross estate as assets over which decedent had, and exercised, a general power of appointment, and that the value of the includable assets of the inter vivos trust and the testamentary trust was $105,385.78 and $863,426.63, respectively.

OPINION

The sole issue is whether the respective values of the trust assets over which decedent was given general powers of appointment by will by his father's trust instruments are includable in his gross estate.

The applicable statute includes in the gross estate the value of all property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent by will.[1]

---

[1] Internal Revenue Code of 1954.
SEC. 2041. POWERS OF APPOINTMENT.
    (a) IN GENERAL.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States)—
        (1) POWERS OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942.—To the

There is no question that the powers conferred upon decedent by his father's instruments were general powers of appointment as defined in the statute. Respondent has determined and here contends that decedent exercised these powers in his will and that the value of the trust assets are thereby included in his gross estate. Petitioner contends: (1) That a legally invalid attempt to exercise a power of appointment is not an exercise within the meaning of the statute; (2) that decedent partially released his powers under his father's trusts by his separation agreement with his first wife so that any exercise thereof was not an exercise of a general power of appointment under section 2041 (a) (1) (i) ; and (3) that under the principles enunciated in *Lyeth* v. *Hoey*, 305 U.S. 188, and *Helvering* v. *Safe Deposit Co.*, 316 U.S. 56, the compromise agreement settling the will contest has the effect of a court decree that decedent did not exercise general powers of appointment in his will.

Decedent was the life beneficiary of the income of two trusts, one an inter vivos trust and one a testamentary trust, which had been established by his father for the benefit of his children. Under the terms of the trust indenture and his father's will, a portion of the assets of each trust was to be distributed upon decedent's death to the person or persons appointed in his will, or, in default of appointments, to his then-living issue.

Decedent left a will and codicil in which he devised one-third of his estate to trustees to pay the net income therefrom to his children during their lives and at their death to pay the remainder to six named charities. The residue of his estate was also given to these six charities. Article Second of the will purported to exercise all powers of appointment over trust assets held by him at the time of his death.

Decedent's will was presented for probate on May 1, 1959. Decedent's children, as contestants of the will's validity, on June 15, 1959, requested the Probate Court to frame questions for a jury trial concerning the will's formal legality, decedent's testamentary capacity, and the presence of fraud or undue influence. On April 15, 1960, a compromise agreement settling the will contest was executed by de-

---

extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

    (A) by will, or

\*      \*      \*      \*      \*      \*      \*

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

    (i) such partial release occurred before November 1, 1951, or

\*      \*      \*      \*      \*      \*      \*

(b) DEFINITIONS.—For purposes of subsection (a)—

    (1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate ; \* \* \*

cedent's children, the charitable legatees, and others. Prior to this agreement, counsel for the children advanced the theory that decedent had partially released his powers of appointment under his father's trusts by the separation agreement with his first wife in which he agreed to appoint to his children. Both the question of testamentary capacity and the question of the release or partial release of the appointive power were considered as serious threats with substantial basis in fact and law by counsel representing the various parties having opposing interests to those of the decedent's two surviving children. The compromise agreement specifically provided that the separation agreement was an effective release of decedent's general powers of appointment over the assets of his father's trusts, that Article Second of the will was to be given no effect, and that the trust assets were to be distributed, as in default of appointment, in equal shares to decedent's two children. Other than the trust assets, decedent's estate was to be distributed as directed in his will. The Probate Court approved the compromise agreement and admitted the will and codicil to probate to be administered in accordance with the terms of the compromise agreement.

*Lyeth* v. *Hoey, supra,* involved the question whether amounts received by certain heirs in derogation of provisions of a will admitted to probate subject to a compromise agreement were exempt from the income tax because received by inheritance. The Court held that since under State law the recipients' rights under the compromise agreement resulted from their claim as heirs that the will was invalid, the amounts were received "by inheritance" within the meaning of the Federal statute, despite the fact that title under Massachusetts law passed first to the devisees under the will. In so holding the Court said (p. 196):

There is no question that petitioner obtained that portion, upon the value of which he is sought to be taxed, because of his standing as an heir and of his claim in that capacity. It does not seem to be questioned that if the contest had been fought to a finish and petitioner had succeeded, the property which he would have received would have been exempt under the federal act. Nor is it questioned that if in any appropriate proceeding, instituted by him as heir, he had recovered judgment for a part of the estate, that part would have been acquired by inheritance within the meaning of the act. We think that the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound, as it disregards the substance of the statutory exemption. It does so, because it disregards the heirship which underlay the compromise, the status which commanded that agreement and was recognized by it. While the will was admitted to probate, the decree also required the distribution of the estate in accordance with the compromise and, so far as the latter provided for distribution to the heirs, it overrode the will. * * * The portion of the decedent's property which petitioner obtained under the compromise did not come to him through the testator's will. That portion he obtained because of his heirship and to that extent he took in spite of the will and as in case of intestacy. * * *

The rationale of *Lyeth* v. *Hoey, supra,* was later applied by the Supreme Court in the case of *Helvering* v. *Safe Deposit Co., supra,* an estate tax case. In that case the decedent was possessed at his death of a general testamentary power of appointment over the assets of each of three trusts. In default of the exercise of his power the assets were to go to his descendants, or if he had none, to his brother and sisters and their issue per stirpes. Decedent left a will in which he purported to exercise his powers of appointment over the trust assets in favor of his brother and sisters. In proceedings in North Carolina courts, decedent's two children claimed the right to the trust assets as takers in default under the trust instruments on the grounds that the will was invalid. Decedent's brother and sisters asserted their right as appointees under the will which they claimed was valid and, alternatively, as takers in default. The controversy terminated in an agreement under which the brother and sisters received 37½ percent of the trust assets and the compromise was confirmed by court decree. Relying on *Lyeth* v. *Hoey, supra,* the Court held that that portion of the 37½ percent of the trust assets which was imputable to the brother's and sisters' claim that the will was valid was includable in decedent's gross estate. The Court said (pp. 64–65) :

> The claim of the decedent's brother and sisters here, so far as based on the validity of the purported appointment, had its roots, like the claimed invalidity of the will in the *Lyeth* case, in an issue never decided in litigation. If it had been litigated to final judgment by a competent tribunal and the brother and sisters had succeeded in establishing the validity of the exercise of the power, the inclusion in the decedent's gross estate of what they would have received as appointees, pursuant to § 302(f), could not seriously be questioned. In the *Lyeth* case we said that "the distinction sought to be made between acquisition through such a judgment and acquisition by a compromise agreement in lieu of such a judgment is too formal to be sound."[3] There is no less reason for the same conclusion here. [Footnote omitted.]

See also *Estate of Gertrude P. Barrett,* 22 T.C. 606; *Estate of Mary Clare Milner,* 6 T.C. 874; *In re Sage's Estate,* 122 F. 2d 480 (C.A. 3), affirming 42 B.T.A. 1304, certiorari denied 314 U.S. 699, wherein this and other Courts have applied the principle of the *Lyeth* v. *Hoey* and *Helvering* v. *Safe Deposit Co.* cases.

On the basis of *Helvering* v. *Safe Deposit Co., supra,* and *Lyeth* v. *Hoey, supra,* the action of the Probate Court in the instant case admitting decedent's will to probate to be administered according to the terms of the compromise agreement is to be given the same effect as a judgment by the Probate Court in favor of the claims commanding the compromise agreement. Although the compromise was reached before issues were framed for jury trial, as distinguished from *Lyeth* v. *Hoey, supra,* the evidence clearly establishes the existence of a noncollusive controversy and an arm's-length agreement. Accordingly, in applying section 2041, the trust assets are imputed to the children's

claims that the will was invalid and that decedent had partially released his powers prior to his death.

Respondent does not question the application of State law in determining the will's validity and whether the powers were released, or the inapplicability of section 2041 in the event of partial release. Respondent contends, however, that a testamentary exercise need not be effective to pass title under State law in order to be an exercise within the purview of section 2041.

Prior to 1942, section 811(f) of the Internal Revenue Code of 1939, the predecessor of section 2041, provided for inclusion in the gross estate of "any property passing under a general power of appointment exercised by the decedent (1) by will, * * *." The requirement that property "pass" resulted in the anomalous exclusion of assets subject to a power exercised by will in favor of the takers in default of appointment, where, under peculiarities of the controlling local law, title to the property passed directly from the donor to the persons occupying the dual status of takers and appointees. See *Helvering* v. *Grinnell*, 294 U.S. 153; *Lewis* v. *Rothensies*, 138 F. 2d 129 (C.A. 3). In 1942, the statute was amended to eliminate the passing requirement making the possession and exercise of a general power created prior to 1942 the only criteria for inclusion. Powers created after 1942 resulted in inclusion, irrespective of the exercise thereof, if decedent had the right to exercise the power at his death. See section 2041 (a) (2).

Cases decided after this statutory change, such as *Estate of Sarah V. Moran*, 16 T.C. 814; *Keating* v. *Mayer*, 136 F. Supp. 286 (E.D. Pa.), affd. 236 F. 2d 478 (C.A. 3); and *Thompson* v. *United States*, 148 F. Supp. 910 (E.D. Pa.), relied upon by respondent, held that property subject to a general power created before 1942 exercised by will in favor of the takers in default was included even though, under local law, title to the property passed directly from the donor. In stating that the exercise of a power of appointment need not be an "effective" exercise, it is clear that the courts were using the word "effective" in the sense of "effective to pass title." This is evident from the language of the Third Circuit in the case of *Keating* v. *Mayer, supra*, wherein, after discussion of the Revenue Act of 1942 and the Powers of Appointment Act of 1951, the court concluded (at p. 483):

> We conclude from the foregoing that when Congress eliminated the requirement of "passing" both in the Revenue Act of 1942 and the Powers of Appointment Act of 1951, but retained in both Acts the requirement of exercise as to powers created prior to October 21, 1942, that it could not possibly have intended that the exercise must be "effective." No other conclusion is possible in view of the elimination of the requirement of "passing" in both statutes. To hold otherwise would be, by judicial legislation, to put back into the statutes referred to that which Congress had eliminated—*"passing"* or *otherwise stated, "effective" exercise.* [Emphasis added.]

None of the above cases held that an invalid attempt to exercise a power of appointment, or an attempt to exercise a power which, because of a prior release, the decedent did not then possess, was to be considered an "exercise" of such a power within the meaning of such statutes. None of the cases involved contested wills; no issue as to the validity of the exercise of the power was presented therein, and no question was raised that the decedent therein did not possess the power of appointment at the time of the attempted exercise because of a prior release or partial release of the power. The only question was whether the appointive property was subject to tax when the appointment was in favor of the same individuals who would have received it in default of exercise of the power and, under local law, title to the property passed directly from the donor and not by virtue of the exercise of the power. In the present case, the decedent attempted to exercise powers in favor of various individuals and charities which would not have been entitled to take in default of exercise. Both the validity of decedent's act and his possession of the power at the time were questioned in the Probate Court. The cited cases relied upon by respondent, while reaching the correct result on the facts therein, are not relevant to the facts presented herein.

Neither the language nor the legislative history of section 2041(a) (1) [2] warrants the conclusion that Congress intended an ineffectual attempt to exercise a power to result in the inclusion of the appointive property in the gross estate. See *Estate of Edith Wilson Paul*, 16 T.C. 743, acq. 1951-2 C.B. 3, wherein this Court held that the term "exercised," as used in section 403(d)(3) of the Revenue Act of 1942, did not include an appointment whereby the decedent sought to create certain remainder interests which were in violation of the Pennsylvania rule against perpetuities. Respondent contended that the appointment was a valid "exercise" within the meaning of the 1942 Act even though it was a legal nullity under the State law. In rejecting respondent's contention this Court said:

> Perhaps, as explained by the court in *Wilson v. Kraemer, supra* [190 F. 2d 341 (C.A. 2, 1951), certiorari denied 342 U.S. 859], Congress in drafting the exception in the 1942 amendment did not intend to restrict the meaning of the word "exercise" so as to exclude a valid appointment subsequently rendered ineffective by the refusal of the beneficiary to take under the appointment. Even so, we find no substantial grounds either in the reasoning of the court in *Wilson v. Kraemer, supra,* or in the legislative history of the Act for concluding that the drafters intended to include a void appointment such as we have here within the meaning of the word "exercise." We do not feel justified in such circumstances in concluding that Congress intended either to make a void act valid for tax purposes or to levy a tax on an estate because of a decedent's mere gesture possessing no legal significance. * * *

---

[2] H. Rept. No. 2333, 77th Cong., 1st Sess., 1942-2 C.B. 372, 417; S. Rept. No. 382, 82d Cong., 1st Sess., p. 3.

It is clear that if the decedent's children had pursued their claims in the Probate Court and obtained a decree that the will was invalid, or that it was invalid insofar as it purported to exercise general powers of appointment, the appointive property would not be subject to Federal estate tax. Under *Lyeth* v. *Hoey, supra*, the compromise agreement which was approved by the Probate Court has the same effect, so far as the appointive property was concerned, for Federal estate tax purposes. The compromise agreement specifically provided that the provisions of decedent's will which purported to exercise the powers of appointment should be given no effect and that the property of the William Minot trusts should be distributed to the decedent's children as in default of appointment. To this extent the decrees of the Probate Court approving the settlement "overrode the will" (*Lyeth* v. *Hoey, supra*). The result was that the children took the appointive property in recognition of their claim that, at the time he executed his will, the decedent either did not possess or did not validly exercise any general power of appointment and that they were therefore entitled to the property as takers in default of exercise of the powers. We hold that the assets of the two William Minot trusts are not includable in the decedent's gross estate.

*Decision will be entered under Rule 50.*