ESTATE OF ELENA B. DRAKE, DECEASED, SHAWMUT BANK OF BOSTON, N.A., EXECUTOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8080–74. Filed February 28, 1977.

*Earle W. Carr,* for the petitioner.
*Barry J. Laterman,* for the respondent.

### OPINION

SCOTT, *Judge:* Respondent determined a deficiency in the estate tax of Elena B. Drake in the amount of $23,372.75. Some of the issues raised by the pleadings have been disposed of by agreement of the parties, leaving for our decision the following:

(1) Whether certain real property which was transferred by decedent in contemplation of death to herself and her husband as joint tenants with right of survivorship is properly includable in decedent's gross estate although 20 years prior

to decedent's death her husband had conveyed this property to her without consideration, decedent's husband having made the entire original contribution for the purchase of the property; and

(2) Whether decedent at the time of her death possessed a general power of appointment granted to her prior to 1942 by a trust established by her father which she exercised by will within the meaning of section 2041(a)(1), I.R.C. 1954.[1]

All of the facts have been stipulated and are found accordingly.

Elena Bianchi Drake, the decedent, died on July 15, 1970. At the time of her death, decedent resided at 2 Grove Street, Bath, Maine. Shawmut Bank of Boston, N.A., the executor of decedent's estate, had its principal office located in Boston, Mass., at the time the petition in this case was filed. The executor filed the Federal estate tax return for decedent's estate with the Director, Internal Revenue Service Center, Andover, Mass.

Decedent was born on August 12, 1910. Her father was Carlo Bianchi, and her brothers and sisters are Peter M. Bianchi (deceased), Fermo A. Bianchi, Ermelina Bianchi Sullivan, and Adele M. Bianchi. Frederick C. Drake, Jr., is decedent's surviving spouse.

In March 1950, decedent's husband conveyed to her, without consideration, property located at 2 Grove Street, Bath, Maine. In May 1970, decedent, without consideration, conveyed the property located at 2 Grove Street, Bath, Maine, to herself and her husband as joint tenants with right of survivorship. The entire consideration for the property located at 2 Grove Street, Bath, Maine, was originally paid by decedent's husband. The transfer of the property at 2 Grove Street, Bath, Maine, by decedent to herself and her husband as joint tenants with right of survivorship was a transfer made in contemplation of death within the meaning of section 2035.

On or about March 28, 1931, decedent's father created a trust by executing an insurance trust deed, naming as trustees the National Shawmut Bank of Boston (now Shaw-

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

mut Bank of Boston, N.A.), his daughter, Ermelina Bianchi Sullivan, and his son, Peter M. Bianchi. Peter M. Bianchi died on November 12, 1967, and no trustee was named to replace him. The insurance trust deed provided in part as follows:

1. In case of the maturity during the lifetime of the Donor, of any endowment policy held by the Trustees hereunder, the Trustees shall dispose of the proceeds of any such policy so received by them, according as the Donor shall in writing direct.

2. Subject to the provisions of Paragraph 1 of this instrument, to divide the Trust Property into equal shares, one share for each of the five children of the Donor, namely—Ermelina Bianchi Sullivan, Peter M. Bianchi, Adele M. Bianchi, Fermo A. Bianchi and Elena J. Bianchi, who is then living, and one share for the then living issue of each of the said five children of the Donor who is then deceased, and to hold and administer said shares as follows:

(A) To pay the income from each share held for a then living child of the Donor, to him or her in equal monthly instalments during his or her life, and also to pay from time to time to such child or for his or her benefit, such amounts from the principal of his or her share of the Trust Property as the said Ermelina Bianchi Sullivan and the said Peter M. Bianchi in their sole discretion shall direct in writing, for any reason whatsoever, and upon the death of a child for whom a share is held, to pay over the then remaining principal of his or her share to such persons and in such proportions as that child shall by his or her last will appoint; provided however, that any child shall have full power to withdraw from the principal of his or her share of the Trust Property at any time [or] times after attaining the age of thirty-five years, such amounts as he or she shall direct in writing, up to and including the entire amount of the principal of his or her share of the Trust Property, in case he or she shall so desire.

Decedent's father, Carlo Bianchi, died on April 24, 1941, survived by all of his five children. None of the stock of a corporation, Carlo Bianchi & Co., Inc., was ever held by the trust established by Carlo Bianchi on March 28, 1931.

On January 12, 1948, the five children of Carlo Bianchi executed an agreement. At the time of the execution of this agreement all of the five children had attained the age of 35 and together owned all the issued and outstanding stock of Carlo Bianchi & Co., Inc. The agreement executed by the five children on January 12, 1948, provided in part as follows:

WHEREAS the parties wish to so provide that the benefit and control of all of the stock of said corporation [Carlo Bianchi & Co., Inc.] will be retained by the parties hereto, and the survivors of them, and their descendants, with no greater interest than income for life going to the husband or wife of any party hereto; and

WHEREAS for this purpose the parties hereto have each executed a will and a Trust Agreement, the dates of which are set forth in the schedule hereto annexed, marked "A," and made a part hereof, the original of each will and of each Trust Agreement being now on deposit with The National Shawmut Bank of Boston, located at Boston, Massachusetts:

Now, THEREFORE, in consideration of the mutual covenants herein contained, and of the sum of One Dollar ($1.00) and other valuable considerations by each party to each other of the parties paid, the receipt of which is hereby acknowledged, the parties hereto do hereby severally covenant and agree as follows:

*First:* Each party agrees that he or she will not revoke his or her said will or execute any codicil thereto unless all the other parties hereto who are then living shall first consent thereto in writing; provided, however, that any party hereto may execute a codicil to his or her said will as hereinafter provided in Paragraph Third, and shall execute a new will or codicil in the events referred to in Paragraphs Fifth, Sixth and Seventh hereof.

*Second:* Each of the parties hereto covenants and agrees that he or she will not revoke, alter or amend his or her said Trust Agreement unless all the other parties hereto who are then living shall first consent thereto in writing; provided, however, that any party hereto may alter or amend his or her said Trust Agreement as hereinafter provided in Paragraph Fourth.

The third paragraph of the agreement permitted any party to execute a codicil changing the disposition of his or her tangible personal property without the consent of the other parties.

The fourth paragraph permitted a change by any party without consent of the other parties to provide that the income from the trust the party had created be paid to the party's husband or wife for life or to the issue of the party until the death of the last survivor of the parties to the agreement, or to provide that upon the death of the last survivor of the parties to the agreement the principal of the trust created by such party might be paid over to the issue of that party if such issue had reached the age of 25 years.

The fifth and sixth paragraphs provided that the parties would execute a new will with the same provisions as the will attached to the agreement, if that will were revoked by his or her marriage or that party had issue born after the execution of the agreement to make reference to such issue.

The seventh paragraph provided as follows:

*Seventh:* In case any party hereto shall make any alteration or amendment in his or her said Trust Agreement pursuant to the provisions of this Agreement, or by consent of all the parties hereto who are then living, such party shall immediately execute a codicil to his will, amending

the residuary clause in said will so that the property going to the Trustee under said Trust Agreement of such party shall be held by the Trustee under the terms of said Trust Agreement as so amended.

In accordance with the understanding in the agreement, decedent executed a will and a trust agreement. Decedent's will, executed January 12, 1948, provided in part as follows:

*First:* All my furniture and furnishings, silver, dishes, pictures, rugs, books, household supplies, jewelry, automobiles and all other articles of tangible personal property, I give and bequeath to my husband Frederick Ellis Drake, Jr., if he survives me, * * *

*Second:* All the right, title and interest owned by me at the time of my death in all the real estate situated in said Natick in which my sisters Ermelina Bianchi Sullivan and Adele M. Bianchi, my brothers Peter M. Bianchi and Fermo A. Bianchi, and I each now own an undivided one-fifth (1/5) interest and which we inherited from our father Carlo Bianchi, I give and devise in equal shares to such of my said sisters and brothers as shall survive me, to be held by them as tenants in common.

*Third:* All the rest, residue and remainder of my property, real and personal and wherever situated, including all the shares of stock of Carlo Bianchi and Company Inc., a Massachusetts corporation, owned by me at the time of my death, I give, devise and bequeath to The National Shawmut Bank of Boston, a corporation duly established by law and having its usual place of business in Boston in the County of Suffolk and Commonwealth of Massachusetts, as Trustee under a Trust Agreement bearing the same date as the date of execution of this will and executed just prior to the execution of this will by me as Donor, and by said The National Shawmut Bank of Boston as Trustee, the said property to be added to and become a part of the Trust Property held by the said The National Shawmut Bank of Boston as Trustee under said Trust Agreement. * * *

* * *

*Sixth:* I direct that the executor shall not sell any of the shares of stock of said Carlo Bianchi and Company Inc. owned by me at the time of my death, and I further direct that all of said stock shall be transferred and delivered, as a part of the residue of my estate, in accordance with the provisions of Article Third of this will. Subject to the provisions of the next preceding sentence, the executor shall have full power and authority to sell, either at public or private sale, or to exchange, lease, pledge or mortgage, in such manner and on such terms as it may deem advisable, any or all property, real or personal, belonging to my estate, and to execute all deeds, assignments, mortgages, leases or other instruments necessary or proper for these purposes. * * *

The trust agreement created by decedent on January 12, 1948, provided in part as follows:

*Article 1.* During the life of the Donor, the Trustee shall pay the net income from the Trust Property to the Donor, or for her benefit or in accordance with her written instructions.

*Article 2.* Upon the death of the Donor, and in case she shall leave both her husband, Frederick Ellis Drake, Jr., and issue surviving her, then during the life of her said husband, the Trustee shall pay one-third (1/3) of net income from the Trust Property to or for the benefit of her said husband, and the remaining two-thirds (2/3) of the income shall be paid in equal shares to or for the benefit of the children of the Donor surviving at the respective dates of payment and the issue then living of any child of the Donor then deceased, such issue to take by right of representation the share of the net income that their parent would have received if living; and upon the death of the Donor's said husband, and until the death of the last survivor of the Donor's brothers, Peter M. Bianchi and Fermo A. Bianchi and the Donor's sisters Ermelina Bianchi Sullivan and Adele M. Bianchi, the Trustee shall pay all of the net income from the Trust Property in equal shares to or for the benefit of the Donor's children surviving at the respective dates of payment and the issue then living of any child of the Donor then deceased, such issue to take by right of representation the share of the net income that their parent would have received if living. * * * * * *

*Article 16.* In the event that the Trustee shall at any time hold as a part of the Trust Property any shares of stock of Carlo Bianchi and Company, Inc., a Massachusetts corporation, the Trustee shall not sell any of said stock while the Donor or any of her said brothers and sisters are living, unless the Donor (if living) and all of her said brothers and sisters who are then living shall consent thereto in writing, and the Trustee shall not be liable for any loss or depreciation resulting from the retention of any such stock. * * *

In August 1968 the agreement of January 12, 1948, was modified. This agreement stated that Peter M. Bianchi, one of the parties to the agreement dated January 12, 1948, died on November 12, 1967; that Fermo A. Bianchi and Elena Bianchi Drake both wished to alter their wills of January 12, 1948, to provide for disposition of real estate in Natick, Mass., to their surviving issue; and that all the living parties to the January 12, 1948, agreement consented to this alteration of their wills. On August 6, 1968, decedent added a codicil to her will, striking article second of her will and substituting a provision leaving her undivided one-fourth interest in real estate in Natick, Mass., in equal shares to her surviving children or surviving issue of a child that predeceased her. It further provided that if no issue survived her the property was to be distributed in equal shares to her surviving brothers and sisters or issue of brothers and sisters who had predeceased her.

On or about July 1, 1970, the agreement of January 12, 1948, was further modified. This modification was consented

to by all of the surviving parties to the agreement of January 12, 1948, and permitted decedent to alter her will and the trust agreement of January 12, 1948, in accordance with a draft of the will attached to the agreement. Decedent, on July 1, 1970, in accordance with the consent granted by the modification of the agreement dated January 12, 1948, executed a will which provided in part:

Third: Pursuant to the provisions of an Insurance Trust Agreement created by my father, Carlo A. Bianchi, on March 28, 1931, under which The National Shawmut Bank of Boston and I are presently Trustees, I have a power to appoint by my will a portion of the Trust Property. I hereby exercise said power by directing the Trustees of said trust to continue to hold the Trust Property subject to my power of appointment in trust during the lives of my husband, FREDERICK E. DRAKE, JR., and my children, and pay to him or for his benefit the net income therefrom during his lifetime and also to pay to him or for his benefit so much from the principal thereof as the Trustees may deem necessary or advisable for his care, comfort, and support, and also to pay to my children or for their benefit so much from the principal thereof as the Trustees may deem necessary or advisable for their care, comfort, support or education, * * *

This will left all of the residue of decedent's property to the trustee of the trust she created on January 12, 1948, as amended on July 1, 1970, to become a part of the trust property held by the trustee under the trust agreement and subject to the terms and provisions of that agreement. The will executed by decedent on July 1, 1970, was in effect at the time of her death.

The amendment to the trust agreement provided that upon decedent's death, if her husband survived her and a marital deduction was permissible under the estate tax laws at that time, the trustee was to set aside a separate fund to be known as Trust Fund A to include sufficient property to provide for the maximum marital deduction allowable and made provision with respect to Trust Fund A to give sufficient interest therein to her surviving husband to have the amount placed in that trust fund qualify for the marital deduction under the estate tax law. No substantive changes were made with respect to the other trust provisions.

In the estate tax return as filed, the land and building at 2 Grove Street, Bath, Maine, were listed as jointly held property with an assessed value of $48,540, but no amount of this value was included in decedent's gross estate, with the explanation

"Decedent did not contribute." On Schedule H, "Powers of Appointment," the following appeared, with no amount included in decedent's gross estate:

The decedent possessed a one-fifth interest in the Carlo Bianchi Trust dated March 28, 1931. This interest is not includable per attached statement. Copy of Trust Agreement attached.

Respondent, in his notice of deficiency, increased the gross estate as reported by $48,540, representing the value of the property at 2 Grove Street, Bath, Maine, with the explanation: "Transfers During Decedent's Life." In further explaining, respondent stated that it was determined that the transfer of the Grove Street property in Bath, Maine, was a transfer made in contemplation of death. Respondent increased the gross estate as reported by $110,004.78 under the designation "Schedule H, Powers of Appointment," and further explained:

It has been determined that the decedent's power of appointment as set forth pursuant to the provisions of the Carlo Bianchi Trust dated March 28, 1931 is a taxable power of appointment with a value of $110,004.78 for federal estate tax purposes.

It is petitioner's position that, since decedent's husband paid the original consideration for the property located at 2 Grove Street, Bath, Maine, and this property at the date of decedent's death was owned by decedent and her husband as joint tenants with right of survivorship, no portion of the property is includable in decedent's gross estate under section 2040.[2] Certainly, petitioner's position would be correct were it

---

[2] Sec. 2040 provides as follows:

SEC. 2040. JOINT INTEREST.

The value of the gross estate shall include the value of all property to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: *Provided,* That where such property or any part thereof, or part of the consideration with which such property was acquired, is shown to have been at any time acquired by such other person from the decedent for less than an adequate and full consideration in money or money's worth, there shall be excepted only such part of the value of such property as is proportionate to the consideration furnished by such other person: *Provided further,* That where any property has been acquired by gift, bequest, devise, or inheritance, as a tenancy by the entirety by the decedent and spouse, then to the extent of one-half of the value thereof, or, where so acquired by the decedent and any other person as joint tenants and their interests are not

not for the fact that decedent's husband had given decedent the entire interest in the property and decedent had transferred that property to herself and her husband as joint tenants with right of survivorship in contemplation of death within the meaning of section 2035.[3]

It has long been settled that where a decedent and his spouse have jointly held property, a contribution to the property's cost by the surviving spouse traced to a gift to the surviving spouse from the deceased spouse does not prevent the jointly held property from being fully included in the estate of the deceased spouse from whom the total consideration for the property initially came. See *United States v. Jacobs*, 306 U.S. 363, 371 (1939). It is, however, respondent's position that where, as here, the entire property was transferred by gift to decedent who thereafter made a transfer in contemplation of death of the property to herself and her husband as joint tenants with right of survivorship, it is immaterial who initially paid the consideration for the property since section 2035 provides that a decedent's estate includes the value of all property of which decedent has made a transfer in contemplation of death. Respondent, relying on our opinion in *Estate of Nathalie Koussevitsky*, 5 T.C. 650 (1945), contends that, where a transfer of property is made to the transferor and another as joint tenants in contemplation of death, it is the same for estate tax purposes as if the transfer had never been made and the property so transferred was owned by decedent at the time of her death. In *Igleheart v. Commissioner*, 77 F.2d 704, 711 (5th Cir. 1935), affg. 28 B.T.A. 888 (1933), the Court stated:

The applicable statute * * * provides that there shall be included in the gross estate of the decedent the value at the time of his death of all property "to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * his death.

---

otherwise specified or fixed by law, then to the extent of the value of a fractional part to be determined by dividing the value of the property by the number of joint tenants.

[3] Sec. 2035 provides in part as follows:

SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, in contemplation of his death.

* * *" The thing taxed is the transmission of property from the dead to the living. For the purposes of the tax, property transferred by the decedent in contemplation of death is in the same category as it would have been if the transfer had not been made and the transferred property had continued to be owned by the decedent up to the time of his death. * * *

The above statement has often been quoted and followed. See *Estate of Frank K. Sullivan,* 10 T.C. 961, 973 (1948), and cases there cited, revd. on other issues 175 F.2d 657 (9th Cir. 1949). Cf. *Estate of James E. Frizzell,* 9 T.C. 979, 986-987 (1947), affd. sub nom. *Burns v. Commissioner,* 177 F.2d 739 (5th Cir. 1949); *United States v. O'Malley,* 383 U.S. 627, 634 (1966).

Petitioner argues that our statement in the *Koussevitsky* case, that where a transfer of property to decedent and his spouse as joint tenants had been made in contemplation of death the property is includable in the decedent's gross estate without reference to which spouse initially paid the consideration for the property, is dicta. Petitioner states that in that case we concluded on the facts that the transfer was not in contemplation of death. Petitioner argues that, since the provision with respect to joint ownership is more specific than the provision with respect to property transferred in contemplation of death, the provision with respect to jointly held property should apply in preference to the contemplation of death provision.

It is well settled that a specific provision of a tax statute relating solely to a precise situation will prevail over a general statute. See *Bulova Watch Co. v. United States,* 365 U.S. 753 (1961). However, this general principle of law is not helpful here since both section 2040 and section 2035 are specific statutes dealing with specific situations. Therefore, where the property has been transferred into joint ownership in contemplation of death, we must consider the purpose and intent of both sections in arriving at the proper amount, if any, of the value of such property to be included in a decedent's gross estate.

Although we consider the issue here to be a close one, in view of the purpose of section 2035 to require the inclusion in a decedent's estate of property transferred by an inter vivos disposition to avoid estate taxes, we conclude that our interpretation of section 2035 in the *Koussevitsky* case was correct, even though it might be considered dicta. In fact, the date of the transfer of the property in Bath, Maine, by

decedent to herself and her husband after she had held it as hers alone for 20 years indicates that the transfer was for no other purpose than to reduce the estate tax of her estate. Also, accepting the view of a number of cases that a transfer in contemplation of death is to be considered for estate tax purposes as if no transfer had been made, the Bath, Maine, property would not be viewed for estate tax purposes as jointly owned property at the date of decedent's death. We therefore sustain respondent's inclusion in decedent's gross estate of the value of the property which she transferred to herself and her husband as joint tenants with right of survivorship in May 1970 in contemplation of death.

With respect to the inclusion in decedent's gross estate of the value of the trust created for her benefit and that of her brothers and sisters by her father, respondent takes the position that decedent held a general power of appointment under the trust instrument created by her father and that she exercised this power of appointment in her will. Respondent states that the agreement between decedent and her brothers and sisters of January 12, 1948, was not a release of the general power of appointment held by decedent or a reduction of that power to a limited power.

Section 2041(a)(1)[4] provides that the value of the gross estate shall include the value of property with respect to which the decedent has a general power of appointment created prior to October 21, 1942, if that power is exercised by

---

[4] Sec. 2041(a)(1) provides as follows:

SEC. 2041. POWERS OF APPOINTMENT.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) POWERS OF APPOINTMENT CREATED ON OR BEFORE OCTOBER 21, 1942.—To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent—

(A) by will, or

(B) by a disposition which is of such nature that if it were a transfer of property owned by the decedent, such property would be includible in the decedent's gross estate under sections 2035 to 2038, inclusive;

but the failure to exercise such a power or the complete release of such a power shall not be deemed an exercise thereof. If a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be deemed to be the exercise of a general power of appointment if—

(i) such partial release occurred before November 1, 1951, or

(ii) the donee of such power was under a legal disability to release such power on October 21, 1942, and such partial release occurred not later than 6 months after the termination of such legal disability.

the decedent by will, but that failure to exercise such power or the release of such power shall not be deemed an exercise thereof. This section further provides that if a general power of appointment created on or before October 21, 1942, has been partially released so that it is no longer a general power of appointment, the exercise of such power shall not be considered the exercise of a general power of appointment if the partial release occurred before November 1, 1951. The history of section 2041(a) has been discussed in a number of cases. See, e.g., *Estate of Anna J. Lombard,* 46 T.C. 310 (1966). Therefore, in our view no useful purpose would be served in again tracing the background leading up to the enactment of the Powers of Appointment Act of 1951, 65 Stat. 91, which contains in substance the same provisions now contained in section 2041(a).

Section 2041(b) defines general power of appointment.[5] This section provides that a power of appointment created on or before October 21, 1942, which is exercisable by decedent only in conjunction with another person shall not be deemed a general power of appointment. Section 20.2041–2(b) of respondent's regulations states:

Section 2041(b)(1)(B) provides that a power created on or before October 21, 1942, which at the time of the exercise is not exercisable by the decedent except in conjunction with another person, is not deemed a general power of appointment.

If the contract entered into by decedent and her brothers and sisters was valid and effective under State law,[6] decedent, after entering into that agreement, could not exercise her

---

[5] Sec. 2041(b)(1) provides in part as follows:

(b) DEFINITIONS.—For purposes of subsection (a)—

(1) GENERAL POWER OF APPOINTMENT.—The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

(B) A power of appointment created on or before October 21, 1942, which is exercisable by the decedent only in conjunction with another person shall not be deemed a general power of appointment.

[6] It is not clear whether the proper State law would be that of Massachusetts or Maine, but respondent does not argue the State law at all and petitioner assumes the Massachusetts law governs.

power of appointment under the trust agreement except with the consent of her brothers and sisters. In our view, under both Massachusetts and Maine laws it is clear that a written contract with respect to the making of a will or an agreement not to change a will is valid. See Mass. Ann. Laws ch. 259, secs. 5 and 5A (1968).[7] See also *Foman v. Davis,* 316 F.2d 254 (1st Cir. 1963); *West v. Day,* 328 Mass. 381, 103 N.E. 2d 813 (1952). See Me. Rev. Stat. Ann. tit. 33, sec. 51(7) (1964);[8] *Brickley v. Leonard,* 129 Me. 94, 149 A. 833 (1930).

Respondent argues that the only purpose of the contract of January 12, 1948, was to insure that stock of Carlo Bianchi & Co., Inc., was not transferred outside the Bianchi family. However, the clear words of the agreement show that it also limits the power of all the participants to change their wills without the consent of the other parties to the agreement. We therefore consider that regardless of what motivated the parties to enter into the contract, the contract effectively did

---

[7] Sec. 5. Agreement to Make a Will, etc., to Be in Writing.

No agreement to make a will of real or personal property or to give a legacy or make a devise shall be binding unless such agreement is in writing signed by the person whose executor or administrator is sought to be charged, or by some person by him duly authorized. This section shall not apply to any agreement made prior to May seventeenth, eighteen hundred and eighty-eight or after September thirtieth, nineteen hundred and sixty-five. (1888, 372; RL 74, sec. 6; 1965, 560, sec. 1, approved June 23, 1965; by sec. 3 it took effect on Oct. 1, 1965.)

Sec. 5A. Agreements Respecting Making, Not Making, and Revocation of Will, etc., to Be in Writing.

No agreement to make a will of real or personal property or codicil thereto or to make a bequest or devise, or to revoke or not to revoke a will, codicil, bequest or devise, or to refrain from making a will, codicil, bequest or devise or any other agreement relative to making or not making a will, codicil, bequest or devise, shall be binding unless such agreement is in writing and signed by the person whose executor or administrator is sought to be charged, or by some person duly authorized thereunto by him in writing. This section shall not apply to any agreement made prior to October first, nineteen hundred and sixty-five. (1965, 560, sec. 2, approved June 23, 1965; by sec. 3 it took effect on Oct. 1, 1965.)

[8] Me. Rev. Stat. Ann. tit. 33, sec. 51(7), provides as follows:

Sec. 51. Writing required; consideration need not be expressed

No action shall be maintained in any of the following cases:

\* \* \*

7. Agreement to give property by will. Upon any agreement to give, bequeath or devise by will to another, any property, real, personal or mixed;

\* \* \*

unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized; but the consideration thereof need not be expressed therein, and may be proved otherwise.

bind each party not to change his or her will without the consent of the other parties to the contract living at the time. Thus, this agreement of January 12, 1948, effectively limited decedent's exercise of her power of appointment so that it was only exercisable in conjunction with her brothers and sisters. We therefore conclude that decedent at the date of her death did not have a general power of appointment created prior to October 21, 1942, within the meaning of section 2041(b), so that the value of the trust created for decedent by her father is not properly includable in her gross estate. *Estate of Sedgwick Minot,* 45 T.C. 578 (1966).[9]

Respondent does not contend that decedent's right to invade the corpus of the trust created for her by her father would cause the value of her interest in the trust to be includable in her gross estate, apparently for the reason that if this provision is considered a general power of appointment it was never exercised. Under section 2041, only where a power created prior to October 21, 1942, is exercised by a decedent is the property includable in decedent's gross estate, and the failure to exercise a power is not considered its exercise. We therefore conclude that respondent erroneously included in decedent's gross estate the amount of $110,004.78 as the value of trust property subject to decedent's general power of appointment under the Carlo Bianchi trust created March 28, 1931.

*Decision will be entered under Rule 155.*

---

[9] See also *Estate of Cornelia P. Cook,* T.C. Memo. 1970-68.